Argued June 26, affirmed September 16, rehearing denied September 30, 1919.

## RICE *v.* DOUGLAS COUNTY.

### (183 Pac. 768.)

**Highways—Saving Clause of Repealing Statute Preserves All Road Improvements Pending.**

1. The saving clause of the County Road Act of May 20, 1917, providing that, notwithstanding repeal of existing statutes, such statutes should continue in force for purposes of completion of any highway proceedings previously instituted, covers the case of a highway proceeding instituted under Laws of 1903, page 264, Section 11 (Sections 6284–6286, L. O. L.), the intention of the legislature having been to preserve all pending proceedings for establishment of roads.

**Statutes—Statutes Should not be Construed Retrospectively to Interfere With Judicial Proceedings.**

2. Unless there is a clear intent to the contrary, statutes should not be construed retrospectively, or so as to interfere with pending judicial proceedings.

**Highways—When Court Opening Highway may Follow Old or New Procedure.**

3. In view of the saving clause of the highway statute of May 20, 1917, after the going into effect of such new statute, repealing prior statutes, the County Court, in opening a county road, could follow either the old or the new procedure in a pending proceeding instituted under the old statutes.

**Highways—When Evidence of Posting of Notices for Establishing Highway Sufficient.**

4. In a proceeding to establish a county road, instituted under Laws of 1903, page 264, Section 11 (Sections 6284–6286, L. O. L.), continuing under the new and repealing statute of May 20, 1917 (Laws 1917, p. 588), posting of notices in three public and conspicuous places in the vicinity of the road, and one on the bulletin-board at the county courthouse, *held* a compliance with law, so that an affidavit stating that one copy of the notice was posted in a public and conspicuous place near the center of the proposed road was sufficient proof, the center of a road being a point in the middle of the road equidistant from the termini.

**Time—Filing Report of Establishment of Highway Day After Holiday Sufficient.**

5. It being impossible to file on June 5th, the day of the general primary election, and a public holiday by proclamation of the Governor, the report of viewers and county surveyor directed to locate a proposed county road, a filing on the next day was sufficient, and the court did not lose jurisdiction because the report was not filed on the holiday, as prescribed in the order.

[As to exclusion or inclusion of Sunday or holiday in computation of time, see note in Ann. Cas. 1917E, 942.]

Highways—When Notes of Viewers and Surveyor Sufficient.

6. Where field-notes of the county surveyor and viewers of a proposed county road showed the beginning point and terminus of the road, and every angle, direction and distance between the point of beginning and the terminus, their preliminary report substantially complied with the act of May 20, 1917 (Laws 1917, p. 588), and the road was duly established by order to that effect; the placing of permanent monuments, etc., not being necessary to constitute the road a public highway, while failure to make final survey and to monument the road does not avoid the order of establishment.

Highway—Right to Review Establishment not Waived by Appeal from Assessment.

7. The right to review proceedings to establish a county road or highway is not waived by an appeal from the assessment of damages to premises through which the road is laid out.

Highways—Qualification of Viewers Sufficiently Shown by Report.

8. The recital in the report of viewers of a proposed county road or highway that before commencing their labors they took an oath faithfully and impartially to discharge the duties of their appointment is sufficient showing that the viewers qualified as required.

From Douglas: James W. Hamilton, Judge.

Department 1.

This proceeding was brought to review the action of the County Court of Douglas County in establishing a county road through plaintiffs' premises. On the twenty-third day of April, 1917, a petition was filed in the County Court, sufficiently specifying the termini and general route of the proposed road, with the following proof of posting of notices, omitting the formal parts of the affidavit:

"I, G. O. Willis, being first duly sworn on oath say that I posted three notices (a copy of which is hereto annexed) of the proposed road, in the following places, to-wit: One at the beginning of said proposed road; one at the termination of said proposed road, and one near the center of said proposed road, all being public and conspicuous places in the vicinity of said proposed road, and in Douglas County, Oregon, and one at the Court House door in Roseburg, Douglas County, Ore-

gon, 30 days prior to the presentation of the petition herewith, to wit: on March 23d, 1917.''

On May 2, 1917, the County Court made an order in the usual form, appointing M. R. Germond county surveyor, and J. B. Large and John L. Chapman viewers, and directing them to meet at the beginning point of said road, as described in the petition, on the twenty-fifth day of May, 1917, and view out and locate said road upon the most practical and feasible route, to assess damages and benefits, and to make an estimate of cost of opening the road, and to make such other recommendations or give such information for or against the location thereof, as might be useful, and file their report on or before June 5, 1917. June 5, 1917, being a public holiday, the report was filed the next day, June 6th.

The method of procedure, required at the time the petition was filed, is set forth in Section 11, p. 264, Gen. Laws 1903, which section constitutes Sections 6284, 6285, 6286, L. O. L. We quote the original statute, as the sectionizing is somewhat confusing.

''Section 11. It shall be the duty of the board of county road viewers, after receiving at least five days' previous notice by one of the petitioners, to meet at the time and place specified in the notice of the County Court aforesaid, or within five days thereafter, and after taking an oath or affirmation, if not already a sworn officer, faithfully and impartially to discharge the duties of their appointment, shall take to their assistance such persons as they may deem necessary, and proceed to survey, view, lay out, alter, straighten, or re-establish such road in the following manner: starting at the initial point asked for in the petition, and following the most practical route, a preliminary line shall be run for the purpose of determining the practicability of said road. All trees on the line of such road shall be marked on each of the sides corre-

sponding with the direction of the road with three notches cut through the bark, and at least one inch into the wood, and all trees adjacent to the line shall be plainly blazed on the side facing the road. The beginning and termination of such road and the termination of each mile thereon shall be designated by a tree, if one is found at the point, if not, then by a stone containing at least one thousand seven hundred and twenty-eight cubic inches, if such stone can be found in the vicinity, if not, then by a post of durable wood, at least four inches square and three and one half feet long, firmly planted not less than eighteen inches in the solid ground. When posts are used, two bearing-trees shall be chosen, the course and distance of each of which from the post, the diameter of the tree and the kind of wood shall be noted by the surveyor. If no stones can be obtained, and no trees suitable for bearing-trees can be found, the surveyor shall cause a mound to be erected by compact earth around the post, eighteen inches high and four feet square. The beginning and terminating points of the road, whether trees, posts, or stones, shall be marked by the letter 'R.' The termination of each mile shall be marked by a figure indicating the number of the mile from the beginning of the road followed by the letter 'M.' The marks required by this section, if occurring on stone, shall be cut legibly at least one eighth of an inch deep; if occurring on trees or posts, they shall be plainly cut at least one fourth of an inch deep in the solid wood, the bark having been first removed. All bearing trees shall be marked on the side facing the post to which they correspond with a figure and letter, the same as that on the post cut into the solid wood in the same manner as other trees are required to be marked. The surveyor shall, after the completion of the preliminary survey, make such a plat as is necessary to show the alignment of the proposed route and the general topography adjacent, together with a profile showing the grade obtainable; and he shall also mark, out of the material obtainable along the proposed route, the character of the ground, together with

any other information bearing upon the subject in
hand. If the route is found to be practicable, the
board of county road viewers shall proceed to make
the final location of the road, and upon the comple-
tion of the same, the surveyor shall deposit with the
county clerk of the county where said road is located,
a complete set of field notes, showing the ties to the
government corners along the route, the location and
witnesses to the mile posts, and the beginning and
terminating points of the road. He shall also deposit
a plat showing the alignment of the proposed road,
which plat shall show all the courses, the location of
all the mileposts, the ties to the government corners,
where obtainable, the location and approximate size
of all creeks, rivers, swamps, cuts, and fills. He shall
also deposit with the county clerk a profile showing
the grades and their per cent, the location of all water
courses, rivers, swamps, and other natural features
that may be important. The location of all culverts,
box drains, bridges, tide boxes, and all highway, rail-
road, and other crossings, and the amount of excava-
tion and embankment, and an estimate of the total cost
of construction, together with any other information
and details that may be useful in connection with the
improvement of such road. The other members of the
board of county road viewers shall also make out a
report, in writing, stating their opinion in favor of
or against the establishment or alteration of such road
and set forth their reasons for the same, which report
shall be delivered to the said county clerk at the same
time and in the same manner as that prescribed for the
surveyor: *Provided,* that when the board of county
road viewers are of one opinion they may each sign
the report. It shall be the duty of the county court
on receiving the said report, or reports, to cause the
same to be publicly read on two different days of the
same term; and if no remonstrance with a greater
number of remonstrators than there is of the petition-
ers upon the petition (be received) (*provided, how-
ever,* that no one shall be deemed a remonstrator ex-
cept a freeholder residing in the road district where

such road is located) and no petition for damages be filed, and the court is satisfied that such road will be of public utility, the report of the viewers being favorable thereto, they shall cause said reports, survey, profile, and plats to be recorded in suitable books kept for that purpose, and from thenceforth said road shall be considered a public highway, and the court shall issue an order directing said road to be opened. In case the board of county road viewers shall file conflicting reports, the county court may elect which report they will accept, and thereafter proceed as though the report accepted were unanimous."

Under this statute a road was not definitely established until the final report of the viewers was filed and approved. In February, 1917, the legislature passed a new act, providing for the procedure in the laying out and location of county roads, and repealing, among others, Sections 6284, 6285, 6286, L. O. L., with a reservation hereafter to be considered. This law became effective May 20, 1917, which was five days before the viewers met to lay out and locate the road in question. The procedure, under the 1917 law, while similar to that required by the 1903 law, was in some respects different. The method of survey prescribed by the latter statute was as follows:

"Starting at the initial point designated in the petition or resolution, and following the most practicable route, a preliminary line or other lines may be run for the purpose of definitely locating the center line of said road and determining the practicability of said road and the necessity therefor. Said board shall assess and determine how much less valuable the premises through which the said road is located, or is to be located, are, and set forth the same in their report; and such report, when adopted by the county court, shall be taken and considered to be the true damages suffered by anyone through whose premises such road is located. The board of county road viewers shall

also make out a report, which shall be in writing, stating its recommendation in favor of or against the establishment or alteration of such road, and shall set forth the reasons for the same. In the event that all members of the board of county road viewers fail to agree, separate reports may be filed, and the county court may elect which report it will accept, and thereafter proceed as though the report accepted were unanimous. The surveyor member of said board of county road viewers shall make a plat of the preliminary line or other survey, showing the alignment of the proposed road and the general topography adjacent, and showing the ties to Government corners along the road where available. Said plat and the report or reports shall be filed in the office of the county clerk on or before the date fixed by the county court in its order for the appointment of said board of county road viewers.''

Section 13 of the Act of 1917 required the report of the viewers to be read on two different days of the next regular term following the filing of the report.

Section 14 provided that persons interested might file remonstrances or claims for damages at any time before the expiration of the day upon which the report should be read the second time.

Section 15 is as follows:

''REPORT CONSIDERED BY COURT. On the day following the second reading of said report, the county court shall consider said report, and if no petition for damages, or remonstrance with a greater number of remonstrators than there is of the petitioners upon the petition, be filed within the time hereinbefore · prescribed, and if the court is satisfied that such road will be of public utility and the amount of the damages assessed is just and equitable, and the report of the viewers being favorable thereto, said court shall thereupon adopt said report and enter an order directing warrants to be issued to the persons and in the amounts designated in the report, and further direct-

ing said road to be finally surveyed and opened, and from the date of said order such road shall be a public highway.''

Section 16 provided that if a claim for damages should be filed, the court should direct the board of viewers to consider the same, and for that purpose the court might, from time to time, postpone the hearing to a day certain but not longer than two consecutive terms. It was further provided that if the petition for damages should be allowed wholly or partly and such award should be accepted by the claimant, the County Court should make an order adopting said report as modified and should make an order establishing the road; but that if the petition should be denied, the court should enter an order establishing the road, but no such order should be final or operate to establish the road unless the time for taking an appeal to the Circuit Court should have expired. There were provisions for immediate opening of the road under certain circumstances not material here.

Section 19 of the 1917 law is as follows:

''County Surveyor to Monument Road and Prepare and File Permanent Record Thereof. When a proposed road is established, upon the final hearing thereon, the county court shall notify the county surveyor thereof, who shall forthwith proceed to survey and monument said road along the alignment established by the final order of the county court, and prepare and file final records thereof.

''In the final survey the termini of said road, and, where practicable, the beginning and ending of each curve or each angle point thereon, shall be designated by permanent monuments or posts, bearing trees, or compact earth mounds in such positions that they will not be disturbed by the construction of said road. Where lettered, all monuments shall be marked by the letter 'R.' Any monument of iron shall be a rod or

pipe at least thirty inches in length and five-eighths inch in diameter, and any monument of stone shall contain at least one thousand cubic inches and shall be at least twelve inches in one dimension. All monuments shall be fully described in the field notes of such survey and their courses and distances given from the points to which they refer.

"The county surveyor shall make and file with the county clerk of the county, a complete set of field notes, together with a plat and a profile. The plat shall show the alignment of the road, the courses and distances, ties to Government corners, and natural watercourses and any other available and necessary date (data). The profile shall indicate the grades obtainable and natural topography. The grade shown on said profile shall not be deemed established, but shall be subject to change as circumstances require."

Section 21 provides for the initiation of proceedings to lay out and locate county roads by resolution of the County Court without petition. The proceedings, as to notice, etc., are similar to like proceedings by petition. A like provision is contained in Chapter 347, Laws of 1913. There was a repealing clause of the act of 1917, which practically purported to repeal all the law in relation to procedure in laying out county roads then in existence, but the act contained the following reservation:

"SAVING CLAUSE. Notwithstanding the repeal of the existing statutes of this State by the provisions of this Act, the said original sections and statutes shall continue in force and effect for the purpose of the completion of any highway proceedings heretofore instituted by the officers herein designated."

AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. B. L. Eddy.*

For respondents there was a brief and an oral argument by *Mr. George Neuner, Jr.,* District Attorney.

McBRIDE, C. J.—1, 2. We are of the opinion that the saving clause above mentioned is broad enough to cover the proceeding at Bar, and that the intent of the legislature was to preserve from destruction all pending proceedings for the establishment of county roads. The petition may fairly be construed to be a request, in legal form, to the County Court to cause the machinery of the law to be set in motion to lay out a county road and, if necessary, to condemn land for that purpose. The petitioners do not technically institute the proceedings, but request the County Court to do so. After such petition, with proof of notice, is filed, the county becomes the active party and may fairly be said to institute all the proceedings, as between itself and the parties over whose land the proposed road is to pass. It is a rule of statutory construction, as well as of sound public policy and justice, that unless there is shown a clear intent to the contrary, statutes should not be construed retrospectively, or so as to interfere with judicial proceedings then pending: Lewis' Sutherland on Stat. Cons., § 238. This rule, we must assume, was known to the legislature when the act of 1917 was adopted. The legislators must have known and appreciated the fact that, as a matter of course, many unfinished road proceedings were pending in the counties of this state, and it is unthinkable that it was the legislative intent to ruthlessly deprive the County Courts of the jurisdiction to complete these and to require the whole proceedings to be begun over again. The savings clause, while crudely drawn, was no doubt intended to preserve the

jurisdiction to complete the proceedings already begun under the old law.

3. The new law, while preserving the jurisdiction, provided a new procedure for its exercise. The jurisdiction, being preserved, the County Court, after May 20th, had a choice of procedure. If necessary, it could follow the previous law; but if the procedure under the new law was deemed more convenient at the particular stage to which the proceeding had gone, there is no reason in the world why it should not be employed. The latter procedure was chosen in this case and if it has been substantially followed, the road has been lawfully located: *Drainage Dist.* v. *Bernards,* 89 Or. 539, 555 (174 Pac. 1167).

4. It is objected that the proof of posting notices of the proposed road is insufficient because the affidavit states, among other things, that one copy of the notice was posted in a public and conspicuous place "near the center of the proposed road." It is contended that the affidavit is indefinite in that the term "near" is merely a relative term and, in the connection used, does not locate any particular point. The center of a road would be a point in the middle of the road, equidistant from the termini. The proposed road, not having been surveyed, it was of course impossible to locate such point with mathematical exactness. The affidavit further shows that the place where the notice was posted was in the "vicinity of the proposed road and in a public place." The finding of the court is, that "the notices were posted in three public and conspicuous places in the vicinity of said road and one on the bulletin-board at the Douglas County courthouse." We think this complies with the requirements of the law, as laid down in the later decisions, and particularly with *Latimer* v. *Tillamook County,* 22 Or. 291

93 Or.—36

(29 Pac. 734) ; *Cameron* v. *Wasco Co.*, 27 Or. 318, 324 (41 Pac. 160). In the latter case there was no averment in the affidavit that the places where the notices were posted were public places, nor any finding to that effect by the court. In an opinion sustaining a writ of review, Justice MOORE said:

"Had the journal entry of the County Court recited that satisfactory proof had been given by advertisement, posted at the place of holding the County Court, and also in three public places in the vicinity of the proposed road, it would be presumed that jurisdiction had been acquired, though the affidavit of posting was ambiguous in its statement of facts."

It is true that the court, in *Minard* v. *Douglas County*, 9 Or. 206, and in *King* v. *Benton County*, 10 Or. 512, speaking through Justice WALDO, announced a rule that would, if now adhered to, reject the proof of posting offered in the case at Bar. In fact, the requirements as to notices were so technical as announced in these opinions, that they have been disregarded, if not expressly overruled in later decisions.

In *Vedder* v. *Marion County*, 22 Or. 264 (29 Pac. 619), STRAHN, C. J., referring to *Minard* v. *Douglas County*, 9 Or. 206, says:

"We deem it a fitting occasion to say, in relation to that case, as well as the case of *King* v. *Benton County*, 10 Or. 512, which followed it, that they introduced a degree of strictness and technicality into the practice, in the matter of the location of county roads, that renders it unnecessarily onerous and expensive, and which is at variance with the entire course of procedure which had prevailed here since the territorial days and up to the time those cases were decided. Nor did the court seem to give any weight whatever to the principles of contemporary construction in such case, which is frequently allowed to have a controlling effect in such matters. Viewing these cases in that light, the

tendency is now to limit their doctrines, or at least to see that they are not extended.''

5. It is claimed that the court lost jurisdiction because the report was not filed on the day prescribed in the order, namely: June 5, 1917. June 5th was the day of the general primary election and was a public holiday by proclamation of the Governor. It being impossible to file the report on that day, we think a filing on the next day was sufficient. Whether it was filed before or after court convened. does not appear. *McMillan* v. *Mason*, 70 Or. 133 (140 Pac. 446), is cited as sustaining plaintiffs' contention. In that case the viewers allowed three months and two terms of court to pass before filing their report. And there was no sufficient affidavit or finding by the court to show a compliance with the law in regard to posting. Justice MOORE held the proceedings void for this reason, and by way of *dictum* remarked in substance: ''It is believed'' that a proper construction of the statute required the viewers to make and file their report before the commencement of the next term of court. The question was not necessarily involved and the conditions were different from those existing in this case, where the intervention of a holiday rendered it impossible to file the report upon the return day.

The question is one not free from difficulty, but we are of the opinion that the report was filed in time. It is very evident that plaintiffs were not injured in any way by the failure of the viewers to file their report a day earlier and while this circumstance would not avail if there were an injunction of the statute requiring the report to be filed at a particular time, yet we do not feel inclined to construe into the law a requirement which it does not contain, in order to defeat a proceeding which seems fair and regular.

6, 7. The preliminary report of the viewers and surveyor seems substantially to comply with the Laws of 1917. The field-notes show the beginning point and terminus of the road and every angle, direction and distance between the point of beginning and the terminus. This shows the thread of the road which is all that the Law of 1917 requires, before directing its permanent location and declaring it a public road. The placing of permanent monuments, milestones, etc., is a matter of detail to be attended to later, and is not necessary to constitute the road a public highway. The failure to make a final survey and monument the road does not render the order establishing it void. If that work is unduly delayed by the surveyor, the County Court, or perhaps any citizen interested, may bring appropriate proceedings to compel him to perform his duty, but such failure cannot be urged upon a review of the proceedings relative to the location and establishment of the road. While a reference thereto is probably not required here, it is proper, in view of the importance of the subject, to say that the right to review the proceedings is not waived by an appeal from the assessment of damages.

8. It is also contended that there is no sufficient showing that the viewers qualified, as required by law. The report of the viewers states that before commencing their labors they took an oath to faithfully and impartially discharge the duties of their appointment. According to the weight of authority such a recital in the report is sufficient: *Husted* v. *Town of Greenwich,* 11 Conn. 383; *Wood* v. *Campbell,* 14 B. Mon. (Ky.) 422; *Town of Huntington* v. *Birch,* 12 Conn. 142; *Dollarhide* v. *Board of Commissioners of Muscatine Co.,* 1 Greene (Iowa), 158. The latter case intimates that even if there had been no mention of the fact in

the report, the presumption would have been that the viewers complied with the law and took the necessary oath of office before entering upon their duties.

It is unusual for an officer to state in his return that he has taken the oath required by law, and it seems to the writer that it is wholly unnecessary where the law does not require a record of such oath, to make any return concerning it; however, the decision of that question is unnecessary, as the report complies with the requirements of the better authorities on that subject.

We fail to find any failure of jurisdiction, or any error affecting the substantial rights of the plaintiffs; therefore the judgment of the Circuit Court is affirmed.

AFFIRMED.

BURNETT, BENSON and HARRIS, JJ., concur.