Argued at Pendleton May 7, reversed July 17, rehearing denied
September 25, 1923.

# RE HARPER IRRIGATION DISTRICT.

## (216 Pac. 1020.)

**Waters and Watercourses—Several Copies Signed by Different
Owners can be Presented as One Petition for Irrigation Dis-
trict.**

1. Several copies of an identical petition for the organization
of an irrigation district, prepared and circulated by, or at the
direction of, the same group of persons, and signed by different
land owners, may be bound together and presented as one peti-
tion, though the statute does not expressly provide that the petition
may consist of a number of separate instruments.

**Waters and Watercourses—Order of Probate Court not Necessary to
Authorize Guardian or Administrator to Sign Petition for Dis-
trict.**

2. The irrigation district law (Sections 7305–7344, Or. L.)
contains no requirement that one who signs a petition for an
irrigation district as guardian or as administrator shall have an
order of the probate court granting authority to sign, and it is
unnecessary for such guardian or administrator to procure authority
from the probate court.

**Waters and Watercourses—Administrator or Guardian of Heirs of
Deceased Entryman cannot Sign Petition for District.**

3. Section 7333, Or. L., authorizing a guardian, adminis-
trator, or executor to petition or vote for the organization of an
irrigation district, where the owner in fee is not otherwise en-
titled to vote, does not authorize the administrator of a deceased
entryman or the guardian of the heirs of such entryman under
the United States Desert Land Laws (U. S. Comp. Stats., Sections
4695a–4695h) to sign a petition for the district, since the wards or
minor heirs of the estate do not own the land in fee.

**Waters and Watercourses—Full Compliance With Reclamation Act
is not Prerequisite to Right of Entrymen to Petition for Dis-
trict.**

4. Under Section 7333, Or. L., authorizing entrymen upon
public lands of the United States to petition for the organiza-
tion of an irrigation district, it is not a prerequisite to the qualifi-
cation of such entrymen as petitioners that all the requirements
of U. S. Comp. Stats., Sections 4695a–4695h, shall have been
complied with, since those requirements cannot be complied with
until the organization of the district has been fully completed.

**Waters and Watercourses—Heirs of Deceased "Entrymen" cannot
Petition for Irrigation District.**

5. The term "entryman," within Section 7333, Or. L., au-
thorizing an entryman on public lands of the United States
to sign a petition for an irrigation district, does not include the

heirs of an entryman who dies prior to completing his entry by final proof, and such heirs are not qualified petitioners.

**Waters and Watercourses—Petition for Irrigation District Containing Every Material Statement Required by Statute is Sufficient.**

6. A petition for the organization of an irrigation district under Sections 7305–7344, Or. L., which contains every material statement required by the statute, is sufficient as against the objection it does not set forth sufficient facts to show that the lands within the proposed district are susceptible to irrigation from the source and by the system referred to in the petition.

**Waters and Watercourses—Practicable Plan for Irrigation is Necessary Before County Court can Order Organization of District.**

7. Before the County Court is authorized to grant a petition for the organization of an irrigation district, satisfactory proofs must be presented, showing a reasonably definite plan of an irrigation works, and one feasible and practical from an engineering view for the irrigation of the lands within the bounds of the proposed district, together with the source of an adequate water supply therefor, obtainable by the district when organized.

**Waters and Watercourses—Publication of Petition and Notice Essential to Jurisdiction to Organize Irrigation District.**

8. The publication of the petition and notice as required by Section 7305, Or. L., is essential to jurisdiction to establish and define the boundaries of a proposed irrigation district; actual knowledge being insufficient.

**Waters and Watercourses—Notice of Petition for District Signed by Clerk of Court is Insufficient.**

9. Under Section 7305, Or. L., requiring the petition for an irrigation district to be published at least four successive weeks, together with a notice stating the time of the meeting at which the petition will be presented, the notice to be published must be signed by the petitioners, and a notice signed only by the clerk of a County Court is insufficient.

**Waters and Watercourses—Lands Susceptible of Irrigation are Conclusively Presumed to be Benefited by District Unless Later Excluded.**

10. Under Section 7306, Or. L., limiting the power of the County Court to exclude lands embraced within the boundaries described in the petition for an irrigation district to those not susceptible of irrigation by the system, there is a conclusive presumption that lands located within the district which are susceptible of irrigation from the system will be benefited thereby, in the absence of a contrary determination obtained later upon a petition for the exclusion of particular tracts in accordance with Section 7341.

**Waters and Watercourses—Irrigation District is Public Corporation and Taxing District.**

11. Under Section 7328, Or. L., the formation of an irrigation district comprehends the creation of a public corporation

and also a taxing district in which the taxes are assessed and levied according to the special benefits accruing to each acre of irrigable lands therein.

**Constitutional Law—Legislature can Delegate Determination of Facts for Organization of Water District.**

12. The legislature may create an irrigation district, describe its boundaries, its water supply, and irrigation system, designate the land which will be benefited thereby and the method of apportioning such benefits, or it may delegate its power to some tribunal to form such district, and to determine any or all of the questions of fact essential to the organization of the district.

**Waters and Watercourses—Determination of Court as to Liability for District Costs is Judicial Inquiry.**

13. When the determination of the benefits from an irrigation district is made by the legislature, its determination is conclusive upon the owners and upon the courts; but if such determination is intrusted to a court or board, the inquiry is judicial in nature, and the owners are entitled to a reasonable notice and an opportunity to be heard before the charge against their property for such benefits becomes irrevocably fixed.

**Waters and Watercourses—Owners of Land Susceptible of Irrigation from District are not Entitled to Hearing on Question of Benefits.**

14. Since the legislature has conclusively determined by Sections 7326, 7328, Or. L., that all lands susceptible of irrigation from the system of a district will be benefited thereby and that the benefits shall be apportioned by acreage except as to original cost, in which case lands already under irrigation shall be assessed only a portion of the cost represented by the additional water right necessary for them, the land owners are not entitled to notice and an opportunity to be heard upon the question of benefits to their lands.

**Waters and Watercourses—Land Owners Injured by Legislative Determination of Benefits from District will be Given Relief by Exclusion of Lands.**

15. Where the legislative determination of benefits from the irrigation district, though not subject to constitutional objections, will work a substantial, legal injury in its application to a particular tract of land, the courts will grant relief to the land owner, and the legislature, in enacting the irrigation district law, has provided for such cases by Section 7341, Or. L., under which a land owner may petition to have his land excluded from the district and is entitled to such exclusion if his lands already receive a complete irrigation from another system, and lands so excluded shall not be liable for any portion of the cost to the district incurred after the petition is presented, thereby giving adequate protection to a diligent owner.

15. Principle that property assessed for public improvements must be benefited thereby, see note in **L. R. A.** 1918E, 190.

From Malheur: Dalton Biggs, Judge.

In Banc.

Reversed.   Rehearing Denied.

For appellant there was a brief over the names of *Messrs. Davis & Kester* and *Mr. J. W. McCulloch*, with an oral argument by *Mr. George E. Davis.*

For respondents there was a brief over the names of *Mr. P. J. Gallagher, Mr. W. H. Brooke* and *Mr. T. P. Wittschen*, with an oral argument by *Mr. Gallagher.*

McCOURT, J.—This proceeding was instituted in the County Court of Malheur County for the purpose of organizing an irrigation district under the provisions of Chap. 357, Laws of 1917 (Sections 7305–7344, Or. L.).   The appellant, Pacific Livestock Company, a corporation, prosecutes this appeal from a judgment of the Circuit Court, affirming an order of the County Court, establishing and defining the boundaries of the proposed irrigation district, designating the name of such district as the "Harper Irrigation District," and establishing an election precinct therein.   Appellant will be hereinafter referred to as the "Livestock Company."

The petition for the organization of the proposed irrigation district complied with the statute as to substance and form; it consisted of five separate instruments, identical in form and similar in all respects, with the exception of the signatures thereon. The five papers which make up the petition were signed respectively by the number of individuals following: Eighteen, eleven, two, one, and one; total, thirty-three.

Each signer claimed to be an owner of land or an entryman of public lands of the United States, except A. L. Lee, who signed the petition as guardian for four minor children of Katie B. Lee, deceased, who in her lifetime held an unreclaimed desert land entry under the public land laws of the United States. A. L. Lee also signed the petition as administrator of the estate of Katie B. Lee.

The petition was lodged with the county clerk of Malheur County on the thirteenth day of May, 1921, and on the eighteenth day of May, 1921, the county clerk prepared and caused to be published the petition mentioned, together with a notice of the hearing thereon as follows:

"Notice is hereby given: That there have been filed in the above entitled Court five similar petitions for the organization of Harper Irrigation District, and that said petitions will be presented to the County Court of Malheur County, Oregon, at a special meeting of said Court duly called to consider and act upon the same, at the Court Room of said Court at Vale, Malheur County, Oregon, on the 21st day of June, 1921, at 2 o'clock P. M. That a copy of one of said petitions is hereto attached; that the other petitions are similar in every way, except as to signatures attached thereto, and that all the signatures contained on the five petitions are herewith printed as a part of this notice.

"(Seal)                           H. S. SACKETT,
    "County Clerk of Malheur County, Oregon.
                        "By ROY DALEY, Deputy."

No other publication of the petition or notice of the hearing thereon was given.

At the time of the hearing upon the petition, the Livestock Company appeared and filed objections to the allowance of the petition, which objections were overruled by the County Court.

Upon this appeal the Livestock Company renews its objections, and makes the following contentions:

(1) That the petition is not signed by a majority of the land owners in the proposed district, and that the petition in fact constitutes several petitions, circulated at different times by different people.

(2) That no authority appears for the signature of A. L. Lee as guardian of the heirs of Katie B. Lee, or as the administrator of the estate of Katie B. Lee.

(3) That entrymen on unpatented government land are not qualified petitioners for the organization of an irrigation district, unless all of the requirements of the act of Congress entitled, "An act to promote reclamation of arid lands," approved August 11, 1916, Sections 4695a to 4695h, U. S. Compiled Statutes, have been complied with.

(4) That the petition does not state any facts from which it can be determined that the lands within the boundaries described in the petition are susceptible of irrigation from the same source and by the same system of works described in the petition as the "storage and diversion of the waters of Malheur River."

(5) That the County Court was without jurisdiction to allow the petition, because the notice of the time when the petition would be presented to the County Court was not signed or published by the petitioners, as required by the statute.

(6) That the statute violates the due process of law clause of the fourteenth amendment to the United States Constitution, in that it does not provide for notice to land owners, and an opportunity to be heard before their lands are included in the boundaries of an irrigation district and made liable to assessment for the cost of construction and maintenance of an irrigation works.

1. The statute does not expressly provide that the petition may consist of a number of separate instruments, as in California, Act 1726, Section 2, General Laws of California (Deering, 1915). But where it appears from the evidence, as it does in the instant case, that for reasons of convenience and expediency, several copies of the petition are prepared and circulated by, or at the direction of, the same person or group of persons, there would seem to be no valid objection to binding the several instruments together and presenting them as one petition.

2. The Livestock Company contends that A. L. Lee was without authority to sign the petition as guardian of the heirs of Katie B. Lee, deceased, or as administrator of the estate of said decedent, without an order of the Probate Court, granting authority to sign the petition. The statute contains no requirement for such an order, and we do not think that it is necessary to procure the same in order to qualify a guardian, administrator or executor as a petitioner.

3. The authority of a guardian, administrator or executor to petition or vote for the organization of an irrigation district is given "where the owner in fee is not otherwise entitled to vote." Section 7333, Or. L. Thus the right of a guardian or administrator to sign a petition for the organization of an irrigation district is restricted by the terms of the statute to cases where the wards or minor heirs of the estate which the guardian or administrator represents, own the land in fee. Therefore A. L. Lee was not a qualified petitioner, either as guardian or as administrator.

4. Entrymen upon public lands of the United States are declared by the statute to be qualified petitioners for the organization of an irrigation district: Section 7333, Or. L. But the Livestock Company insists that such an entryman is not competent to sign such peti-

tion, unless all of the requirements of the act of Congress, entitled "An act to promote reclamation of arid lands," approved August 11, 1916, Sections 4695a to 4695h, U. S. Compiled Statutes, have been complied with.

An examination of the last-mentioned act discloses that the consent of the United States that the lands to which it holds title within a proposed district shall be subject to their proportionate burdens of the construction, maintenance and operation of irrigation works under the conditions named in the statute, is granted only to irrigation districts whose organization has been completed, and that it is only fully organized districts that are eligible to comply with the conditions prerequisite to the giving of such consent. Obviously, entrymen upon public lands of the United States within proposed irrigation districts cannot make the necessary showing to obtain such consent before the organization of the district is perfected, and the Oregon statute does not require them to do so. Such entrymen are qualified petitioners without regard to the provisions or requirements of the federal statute, but the lands embraced within their respective entries cannot be subjected to an effective lien for the cost of construction and maintenance of irrigation works, without the consent of the United States obtained by compliance upon the part of the officers of the irrigation district with the requirements of the federal statute.

5. The term "entryman" we think does not include the heirs of an entryman who dies prior to completing his entry by final proof, and such heirs are not qualified petitioners for the organization of an irrigation district.

It is not necessary to review in detail the testimony offered to show the qualification or lack of qualifica-

tion of each of the petitioners, as in any view of the evidence it appears that the necessary number of qualified petitioners signed the petition.

6. The claim of the Livestock Company that the petition is insufficient because it does not set forth sufficient facts to show that the lands within the proposed district are susceptible to irrigation from the source and by the system referred to in the petition is not well founded. The petition contains every material statement required by the statute, and is therefore sufficient: *Henrett* v. *Warmsprings Irr. Dist.*, 86 Or. 343, 358 (168 Pac. 609); *Hanley Co.* v. *Harney Irr. Dist.*, 93 Or. 78, 88 (180 Pac. 724, 182 Pac. 559); *Greig* v. *Owyhee Irr. Dist.*, 102 Or. 265, 269 (202 Pac. 222).

7. However, before the County Court is authorized to grant a petition for the organization of an irrigation district, satisfactory proofs must be presented, showing a reasonably definite plan of an irrigation works, and one feasible and practical from an engineering view, for the irrigation of the lands within the boundaries of the proposed district, together with the source of an adequate water supply therefor, available to, and obtainable by, the irrigation district then organized. Otherwise, the court will be without the data essential for determining the principal question submitted to its decision, viz.: What lands within the boundaries of the proposed district are ''susceptible of irrigation by the same system of works applicable to other lands in such proposed district?''

8. The County Court is not authorized to establish and define the boundaries of a proposed irrigation district until jurisdiction is obtained of those persons who may be interested in the organization of the district; such jurisdiction is acquired by the publication

of the petition, together with a notice stating the time of the meeting of the County Court at which the petition will be presented, for the length of time prescribed by the statute: *Herrett* v. *Warmsprings Irr. Dist., supra; Hanley Co.* v. *Harney Valley Irr. Dist., supra.*

9. The provision of the statute directing publication of the petition and notice of the hearing thereon is as follows:

"Such petition shall be presented at a regular meeting of the County Court, or at any special meeting called to consider and act upon the same, and shall be published once each week for at least four successive weeks before the time at which the same is to be presented, in some newspaper printed and published in the county where said petition is presented, together with a notice stating the time of the meeting at which the petition will be presented, * * ." Section 7305, Or. L.

The first statute of this state providing for the organization of irrigation districts was enacted in 1895: Laws 1895, p. 13. It was substantially a copy of the statute of California, known as the Wright Act. The requirements of publication and notice, above set forth, are practically identical with those contained in the Wright Act and in the first statute enacted in this state.

In the instant case the petition was filed with the clerk of the County Court before the publication of the petition and notice of the hearing. The clerk signed and published the notice as above set forth. The statute does not give the clerk any authority to publish the petition or the notice. The Livestock Company insists that the notice signed and published by the clerk did not vest the court with jurisdiction over the land owners or their lands.

In *Greig* v. *Owyhee Irr. Dist., supra,* Mr. Chief Justice McBride, speaking for the court, said:

"Then follows the objection that 'the notice of hearing of the petition is signed by the petitioners and not by the County Court or clerk thereof.' The mode pursued was the proper one and has been the invariable practice. It would be an anomaly, if the clerk of the court should be required to give notice that the petitioners would present to the court an application not yet filed and which the law did not require to be filed until presentation."

In *Re Central Irr. Dist.,* 117 Cal. 382 (49 Pac. 354), the Supreme Court of California had under consideration proceedings for the organization of an irrigation district under the provisions of the Wright Act, in which there had been published for the length of time required by the statute, the petition with the names of the signers thereto, and immediately below the names of the petitioners, a notice as follows:

"The foregoing petition will be presented to the honorable board of supervisors of Colusa County on Monday, October 10, 1887, at 10 o'clock A. M. of that day."

The notice was unsigned. The court held that the notice was insufficient, saying:

"It did not appear from it that it was given by the petitioners, who alone could issue the process. * * It is essential to the validity of notice that it shall bear upon its face evidence that it has been given by the person authorized so to do, and this evidence is shown by the signature of the officer or other person charged with the duty. Nor can the defect in the notice be cured by proof of actual knowledge upon the part of those to be affected thereby. The statutory warning must be given, and must conform to the statutory requirements."

The Supreme Court of California based its decision largely upon the case of *Minard* v. *Douglas County*, 9 Or. 206, which involved a proceeding for the establishment of a public road.  The statute under consideration in that case required that the petition for the establishment of a county road should be signed by at least twelve householders of the county residing in the vicinity of the proposed road, and that notice should be given by advertisement thirty days previous to the presentation of said petition to the County Court, notifying all persons concerned that application would be made to the County Court at their next session for laying out the road: Deady's Code, p. 721. The notice was signed, "A. H. Kennedy, Attorney for Applicants."  The court said:

"According to the theory of the common law, all power of judicature flowed from the crown, and courts had no power to compel a party to appear, or to proceed to the determination of a cause, until the king, by his original writ, had issued his command to the sheriff to summon the defendant before them. Here 'the state is the sovereign by whose power alone the citizen can be compelled to appear in its courts to answer an action brought against him.' * *

"Hence, since the notice is in the nature of process to bring a party before a tribunal exercising judicial powers, it must be given by some one authorized by the state to give it.

"Notice, in the sense of the statute, does not mean knowledge.  Actual knowledge, or the want of it, cannot be shown.  It means the statutory instrumentality of knowledge—the formal process, emanating from the source and served in the manner prescribed by the statute.  The advertisement is the process * * .  The notice, then, must be issued by persons authorized by law to issue it; and it seems clear that this fact must be shown on its face by proper authentication, as more formal process must show it.  No person can be summoned before a legal tribunal but in pursuance

108 Or.—39

of law, and by persons authorized by law to summon him.''

Further answering the argument advanced in that case, that the notice might be given by someone other than the petitioners, the court continued:

''It is said that the statute does not require any particular person or persons to give the notice, and therefore any person may give it. But at the first step in the construction of the statute, we find the petitioners invested with this power. We find that the notice which these powers [persons] are empowered to give, is in the nature of process to bring a party into court; and, further, that no person can exercise such power unless specially authorized, which, as to the petitioners, as we have seen, is deduced from the statute by necessary implication. * * Where a plain, simple, sensible construction has been given to a statute, nothing more can be incorporated into it by implication. And, further, since the statute requires notice to be given, it must be some one's duty to give it. It cannot be the duty of a stranger. It must, therefore, be the duty of the petitioners; and hence, the proposition that the statute does not require particular persons to give the notice, cannot be true.''

After reviewing numerous decisions, the court concluded:

''Again: If the notice be viewed but as an incident in the proceeding, coming from one party to another, not as an implied mandate, but for the purpose of giving knowledge of some step in the case, it is still essential that the notice should be signed by the petitioners. The notice must come from an authentic source—that is, from the petitioners.''

The decision in *Minard* v. *Douglas County, supra*, has been criticised upon another phase of the case: *Vedder* v. *Marion County*, 22 Or. 264 (29 Pac. 619); *Rice* v. *Douglas County*, 93 Or. 551, 562 (183 Pac.

768). But the doctrine expressed in the above excerpts has never been departed from by this court, and is controlling in this case.

*In re Central Irr. Dist., supra,* was followed in an able and well-considered opinion by the Supreme Court of Colorado (*Ahern* v. *Board of Directors,* 39 Colo. 409 (89 Pac. 963), in which the court construed the requirements of notice and publication contained in the Colorado statute, which was then identical with the corresponding section of the Wright Act of California.

The county clerk in the instant case was not clothed by the statute with any power or authority to sign or publish the notice of the time the petition would be presented. The publication of the notice signed by the clerk had no more efficacy than if the notice had been given by a stranger to the proceedings. To obviate the necessity of all the petitioners signing the notice of the time when the petition will be presented, it is provided by the statutes of Idaho and Washington that the notice need only carry the first name on the petition; the statutes of Arizona and New Mexico and the present statute of Colorado provide that the notice shall be signed and published by a committee of the petitioners appointed for that purpose; while the statutes of Wyoming and Montana direct that notice shall be given by the clerk of the court.

10. The statute of this state contains the original requirement that the petitioners shall publish the notice of the time of hearing, and in the light of the foregoing authorities, the notice in the instant case, signed and published by the county clerk, was unauthorized and was insufficient to give the court jurisdiction over the persons interested in the organization of the proposed irrigation district, without which it was not empowered to act upon the petition.

The conclusion that the County Court did not acquire jurisdiction to establish and define the boundaries of the district requires a reversal of the judgment of the Circuit Court, but as it is likely that another attempt will be made to organize the district, it is appropriate to determine the questions raised by the contention of the Livestock Company that the statute does not afford notice to land owners within the boundaries of a proposed district and an opportunity to be heard upon the question of whether their lands will be benefited by the contemplated improvement and subjected to assessments for the cost of constructing and maintaining the same.

The Livestock Company owns in fee about 3,000 acres of land, comprising the lower bench lands on either side of the Malheur River, and lying adjacent to that stream, all of which lands are now, and most of them have been for more than thirty years, irrigated by water diverted from that river pursuant to old established water rights owned by the Livestock Company, and according to an irrigation practice which the company insists produces the best practicable results, considering the locality and the business in which it is engaged, that of raising livestock.

The petition calls for the organization of an irrigation district which shall include the above-mentioned lands, also about 6,000 acres of arid and unirrigated lands surrounding the lands of the Livestock Company and lying high above, and considerable distance from, the Malheur River, the title to a large part of which is in the government of the United States. The water to irrigate the dry lands above mentioned must be obtained, if at all, from storage waters impounded by the Warmsprings Irrigation District in a reservoir located upon the Malheur River about fifty

miles above the upper boundary of the proposed irrigation district.

No evidence was presented by the petitioners that the plan suggested by them for irrigating the land is either feasible or practicable from an engineering view, and no showing was made that a water supply could be secured from the Warmsprings Irrigation District or elsewhere, either for irrigating the lands within the proposed district other than those owned by the Livestock Company or of sufficient volume to enable the Livestock Company to obtain a more complete irrigation for its lands than they now receive.

The Livestock Company claims that the construction of the irrigation works suggested by the petitioners would not result in any benefit to its lands, as they already receive sufficient irrigation, and urges that the statute, in violation of the state and federal Constitutions, authorizes such lands to be included in the proposed irrigation district and saddled with a heavy burden for the cost of construction and maintenance of irrigation works, in the absence of corresponding benefits and without according the Livestock Company notice and an opportunity to be heard upon the question of benefits.

The Livestock Company points out that the lands owned by it within the proposed district constitute by far the major part of the deeded lands therein, and that no assessment can be made or levied upon lands, the title to which is in the government of the United States, until the plan is first approved by the Secretary of the Interior; and further, that in the event the project should prove not to be feasible or its cost excessive, and upon either account should be abandoned, the burden of the preliminary expenses of plans, surveys and salaries of officers would fall upon, and be assessed against, the lands of the Livestock Company:

*Northern Pacific Ry. Co. v. John Day Irr. Dist.,* 106
Or. 140 (211 Pac. 781).

The statute in its application to the instant case
limits the power of the County Court to exclude lands
embraced within the boundaries described in the pro-
vision by the following proviso:

" * * provided, that said court shall not modify
said boundaries so as to except from the operation of
the act any territory within the boundaries of the
districts proposed by said petitioners which is sus-
ceptible of irrigation by the same system of works
applicable to other lands in such proposed district;
* * ." Section 2, Chap. 357, Laws 1917; Section
7306, Or. L.

Prior to the revision of the statute in 1917, the
proviso above quoted contained this additional direc-
tion:

" * * nor shall any lands which will not, in the
judgment of said court, be benefited by irrigation by
said system, be included within such district." Laws
1895, p. 13; Section 6168, L. O. L.

It was held in *Fallbrook Irr. Dist. v. Bradley,* 164
U. S. 112 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also,
Rose's U. S. Notes), that the omitted provision above
quoted imposed upon the board of supervisors, which
performed the same functions as the County Court
under our statute, the duty of hearing evidence and
determining whether a particular tract of land would
be benefited by the organization of the irrigation dis-
trict, and the construction of the proposed irrigation
system. By omitting that provision the legislature in
enacting the present statute, withdrew from the
County Court the jurisdiction and authority to deter-
mine the question of whether a particular tract of
land would be benefited by the contemplated improve-
ment, with the qualification that the County Court is

clothed with the power and the duty of determining
what lands within the proposed district are susceptible
of irrigation by the same system of works applicable
to other lands in such proposed district. Lands in-
cluded within a proposed district by the order of the
County Court are conclusively presumed to be
benefited by the improvement, in the absence of a con-
trary determination obtained later upon a petition for
the exclusion of particular tracts of land by the
owners thereof, in accordance with the directions of
the statute: Section 7341, Or. L.

The statute further provides that all obligations for
the payment of money authorized and incurred by the
district after its organization has been completed—

" * * shall be paid by the revenue derived from
the annual assessments upon the land in the district,
and all the lands in the district shall be and remain
liable to be assessed for such payments as herein pro-
vided, and under and subject to the provisions of this
act." Section 7326, Or. L.

When the amount of money necessary to be raised
in any year is computed and determined by the board
of directors, the statute declares that the same—

" * * shall be and constitute an assessment upon
all of the land included in said district, and shall be
apportioned by said board to the lands owned or held
by each person, firm, or corporation, so that each acre
of irrigable land in the district shall be assessed and
required to pay the same amount as every other acre
of irrigable land therein * * ." Section 7238, Or. L.

Where a tract of land has water rights appurtenant
thereto, the last foregoing requirement of the statute
is qualified as follows:

" * * the assessments against such land, except for
operation, maintenance and drainage, shall be in the
same proportion to a full assessment as the additional

water right to be supplied to such tract bears to a full water right, and for operation, maintenance and drainage, each irrigable acre in the district shall be assessed the same as every other irrigable acre * * ." Section 7328, Or. L.

Provision is made for the board of directors to meet as a board of equalization for the purpose of reviewing and correcting its assessments and apportioning the taxes, notice of which is directed to be given by publication (Section 7329, Or. L.), and at which meeting such board of equalization is required to hear and determine any objections by any interested persons to the assessments and apportionment thereof, and the board—

" * * shall change its assessment and the apportionment thereof and the list and record of the same as to irrigable acreage, description, etc., in any respect and in such manner as may be necessary to make the same just and in accordance with the facts." Section 7330, Or. L.

It will be noticed that the statute does not provide for notice and hearing to land owners, either upon the question of whether their lands will be benefited by the proposed improvement or upon the amount that shall be assessed against the lands within the district upon account of supposed benefits thereto. Notice is required to be given and a hearing allowed only in respect to the irrigable acreage of each owner and the apportionment to each tract of irrigable land of its proportionate part of the whole amount assessed.

The several provisions of the statute above mentioned amount to a legislative determination: First, that all lands susceptible of irrigation by the same system of works applicable to other lands in a proposed irrigation district will be benefited by the construction, operation, and maintenance of the irrigation

works mentioned in the petition, and therefore all such lands shall be included in such district; and second, that when the requirements of the statute have been complied with, and an irrigation works constructed, each irrigable acre so included in an irrigation district will be benefited by the cost and expense of constructing, maintaining and operating the system in the same amount as every other irrigable acre therein, except that for the cost of construction. The benefits to tracts of land having water rights appurtenant thereto are determined to be in the proportion that the additional water right to be supplied to any such tract bears to a full water right.

11. The formation of an irrigation district under the statute comprehends the creation of a public corporation and also a taxing district, in which taxes are assessed and levied according to the special benefits accruing to each acre of irrigable land therein: Section 7328, Or. L.; *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 (41 L. Ed. 369, 394, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes); *Board of Directors* v. *Peterson,* 64 Or. 46 (128 Pac. 837); *Northern Pacific R. Co.* v. *John Day Irr. Dist.,* 106 Or. 140 (211 Pac. 781); *Interstate Trust Co.* v. *Montezuma Valley Irr. Dist.,* 66 Colo. 219 (181 Pac. 123).

12. It is within the power of the legislature to create an irrigation district, and in the act creating the same, describe the boundaries of the district, the water supply and irrigation system by which the land shall be irrigated, designate the land which will be benefited by such irrigation, and the method of calculating and apportioning such benefits, or it may provide that the formation of such irrigation district shall be accomplished by procedure before some designated tribunal, and vest such tribunal with jurisdic-

tion and power to determine any or all of the questions of fact essential to the organization of the same: *King v. Portland,* 38 Or. 402, 414 (63 Pac. 2, 55 L. R. A. 812); *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56); *Wagner* v. *Leser,* 239 U. S. 207 (60 L. Ed. 230, 26 Sup. Ct. Rep. 66); *Spencer* v. *Merchant,* 125 U. S. 345 (31 L. Ed. 763, 8 Sup. Ct. Rep. 921); *Parsons* v. *District of Columbia,* 170 U. S. 45 (42 L. Ed. 943, 18 Sup. Ct. Rep. 521); *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324, 343 (46 L. Ed. 879, 21 Sup. Ct. Rep. 625); *Voight* v. *Detroit,* 184 U. S. 115 (46 L. Ed. 459, 22 Sup. Ct. Rep. 337); *Goodrich* v. *Detroit,* 184 U. S. 432 (46 L. Ed. 627, 22 Sup. Ct. Rep. 397, see, also, Rose's U. S. Notes); *Northwestern Improvement Co.* v. *John Day Irr. Dist.,* 286 Fed. 294; *Brookes* v. *City of Oakland,* 160 Cal. 423 (117 Pac. 433).

13. The authorities last cited announce and enforce the rule that when the legislature in creating such an improvement district, or in providing for its organization by proceedings before a court or board, determines and declares the class of lands that will be benefited by the particular improvement, the method of apportioning such benefits to the lands so classified and any other matter material to the organization of such a district or the exercise of its proper functions, its determination is conclusive upon the owners and upon the courts. But when the determination of the benefits, if any, to lands within a proposed district, or any question involving an assessment against property for benefits, is entrusted to a court or board, the inquiry is judicial in nature, and the owners are entitled to reasonable notice and an opportunity to be heard before a charge against their property for such benefits becomes irrevocably fixed.

14. The legislature having determined that all lands will be benefited by the organization of a proposed irrigation district and the construction and operation of its irrigation works, which the County Court finds to be "susceptible of irrigation from the same system of works applicable to other lands in such proposed district," that determination is conclusive on the land owners, and they are not entitled to notice and an opportunity to be heard upon the question of benefits to their lands.

As was said by the court in the case of *Fallbrook Irr. Dist.* v. *Bradley, supra—*

"The legislature * * is supposed to have made proper inquiry, and to have finally and conclusively determined the fact of benefits to the land included in the district, and the citizen has no constitutional right to any other or further hearing upon that question. The right which he thereafter has is to a hearing upon the question of what is termed the apportionment of the tax, i. e., the amount of the tax which he is to pay. *Paulsen* v. *Portland*, 149 U. S. 30–41 (37 L. Ed. 637–641, 13 Sup. Ct. Rep. 750, see. also, Rose's U. S. Notes)."

15. Where, however, that legislative determination although not subject to any constitutional objections, will, in its application to a particular tract of land, work a substantial legal injury, the courts will grant relief to the land owner: *King* v. *Portland*, 38 Or. 423, 427 (63 Pac. 2, 55 L. R. A. 812) ; *Oregon & California R. Co.* v. *Portland*, 25 Or. 229 (35 Pac. 452, 22 L. R. A. 713, 46 Am. & Eng. Corp. Cas. 295); *Norwood* v. *Baker*, 172 U. S. 269, 279 (43 L. Ed. 443, 19 Sup. Ct. Rep. 187) ; *Myles Salt Co.* v. *Iberia & S. M. Drainage Dist.*, 239 U. S. 478 (60 L. Ed. 392, 36 Sup. Ct. Rep. 304, L. R. A. 1918E, 190, see, also, Rose's U. S. Notes) ; *Hancock* v. *Muskogee*, 250 U. S. 454 (53 L. Ed. 1081, 39 Sup. Ct. Rep. 528).

The legislature anticipated that such exceptional cases might arise, and prescribed the procedure which the land owner who is injured, or threatened with injury, must pursue in order to obtain relief. A land owner, whose lands are not, or cannot be, benefited by the improvement, may, upon petition to the board of directors of the irrigation district, obtain an order excluding his lands from the district. If the order of exclusion is denied, the petitioning land owner may appeal from the order of the board to the Circuit Court: Section 7341, Or. L.; *Re Application of Riggs,* 105 Or. 531, 553 (207 Pac. 175, 210 Pac. 217).

That statute makes it the imperative duty of the board of directors to make an order excluding those lands so petitioned to be excluded from the district, which it is shown already receive, or are entitled to receive, a complete irrigation from a system of irrigation works theretofore provided by the petitioning land owner: (Subd. d); *Harelson v. South San Joaquin Irr. Dist.,* 20 Cal. App. 324 (128 Pac. 1010).

The statute also provides that lands so excluded shall not be answerable for, or chargeable with, any obligation or liability of any nature or kind whatsoever, incurred after the filing of the petition for exclusion, but that such lands shall not be relieved from obligations and liabilities of the district existing at the time the petition was filed: (Subd. i.)

The aforesaid provisions of the statute for the exclusion of lands from an irrigation district enable a land owner therein, who acts promptly, to avoid any unjust burden upon his lands, which may be authorized in the first instance by the legislative determination that they will be benefited by the improvement.

Because of the failure of the petitioners to publish the notice of the time of the hearing upon the petition,

which the statute requires, the judgment of the Circuit Court is reversed.

REVERSED.    REHEARING DENIED.