[S. F. No. 5895.  In Bank.—August 1, 1911.]

## F. W. S. BROOKES, Appellant, v. CITY OF OAKLAND et al., Respondents.

CONSTITUTIONAL LAW—DUE PROCESS OF LAW—LOCAL ASSESSMENT DISTRICTS—NOTICE AND OPPORTUNITY TO BE HEARD—LEGISLATIVE DELEGATION OF AUTHORITY TO CREATE DISTRICTS.—Under the constitutional provision that no person shall be deprived of his property except by due process of law, it is not within the power of the legislature to confer upon a city council, or other local body, the authority to create local assessment districts for taxation to pay for local improvements, without some provision for notice to the persons interested and a hearing upon the question of the limits of the district and the exclusion of their property therefrom, if it is found not to be benefited thereby.  Such an act, making no provision for such notice, is unconstitutional and void.

ID.—LEGISLATURE MAY FIX LIMITS OF DISTRICT—BENEFITS TO LANDOWNER.—The legislature itself has the power to fix by statute the limits of a local taxing district, such as a sewer district embracing a portion of a municipality, without a formal notice or hearing, and

when it has done so, the courts will not inquire into the matter of a hearing before the legislature, nor into the legislative decision as to the property benefited and properly included in the district, but will regard that determination as final and conclusive. Where, however, the legislature commits the determination of that question to some local tribunal, at some stage in the proceedings, in order to constitute due process of law, the landowner must be accorded a hearing upon the question whether or not his land is benefited by the proposed public improvement, and whether or not it shall be, in effect, ex-excluded from the district, although within its territorial limits.

ID.—WHAT CONSTITUTES DUE PROCESS OF LAW A FEDERAL QUESTION.— The question whether or not an act operates to deprive persons of property without due process of law, in contravention of the four-teenth amendment of the constitution of the United States, is a federal question, upon which the decisions of the supreme court of the United States are the controlling authority.

ID.—SEWER DISTRICTS IN MUNICIPALITIES—ACT OF FEBRUARY 13, 1911, UNCONSTITUTIONAL.—The act of February 13, 1911, providing that the city council of any city may create, within such city, separate sewer districts, whenever it may be necessary or convenient in their judgment for the proper sanitation of such district, and authorizing the issuance of bonds for the construction of sewers therein, to be paid by means of taxes levied and assessed upon the property within the district, the same to be levied, assessed, and collected in the same manner and at the same time as other taxes for municipal pur-poses are levied, assessed, and collected, is unconstitutional and void, for the reason that it contains no provision whatever for any notice or hearing upon the question of the limits of the sewer district, and no opportunity is afforded a property-owner to be heard upon the question whether the proposed sewer will benefit his property, or the question whether his property should be included in the district to be taxed for its construction.

ID.—NOTICE IN RESPECT TO EQUALIZATION OF TAXES INSUFFICIENT.—No such notice or hearing is afforded the owner of property within the proposed sewer district, by the hearing with respect to the regular annual valuation of his property by the city assessor before the city board of equalization, under sections 3673 and 3682 of the Political Code, which the city charter makes applicable to assessments for city purposes.

ID.—BONDS OF DISTRICT ARE INVALID—DEPRIVATION OF PROPERTY WITH-OUT DUE PROCESS OF LAW.—A resolution of the city council pur-porting to create such a sewer district is invalid, and the bonds pro-posed to be issued for the contemplated work would be void, for the reason that the property-owners will be deprived of their property to the extent of the taxes they may be compelled to pay if the pro-ceedings are carried out, without due process of law, in that they will be afforded no opportunity to be heard with respect to the question

whether or not their property is benefited by the sewer and was therefore properly included in the district to be taxed.

ID.—BONDS NOT MUNICIPAL OBLIGATIONS.—Under such statute, the bonds provided for therein do not become obligations of the city in which the district may be situated, and there is no constitutional provision requiring that the city should become liable thereon. Consequently provisions of the city charter fixing the rate of interest on city bonds issued for municipal improvements are inapplicable thereto.

ID.—REPEAL BY IMPLICATION OF PRIOR ACT.—The act of February 13, 1911, if in conflict with the act of 1891 (Stats. 1891, p. 84), to the effect that no city shall incur an indebtedness for public improvements exceeding fifteen per cent of the assessed value of the taxable property therein, to that extent operated to repeal the former act.

ID.—SEWER DISTRICT UNDER VROOMAN ACT.—The provisions of the Vrooman Act, authorizing the construction of sewers in cities, to be paid for by special assessments upon the property within a district fixed by the city council, enables a sewer to be constructed substantially in the manner attempted to be provided for in the act of 1911, and the Vrooman Act makes proper provision for a hearing before the council as to the extent of the assessment district, before it is formed.

APPEAL from a judgment of the Superior Court of Alameda County. T. W. Harris, Judge.

The facts are stated in the opinion of the court.

Reed, Black & Reed, for Appellant.

Ben F. Woolner, City Attorney, and Snook & Church, for Respondents.

SHAW, J.—This is an action by the plaintiff, on behalf of himself and others as taxpayers within a certain part of the city of Oakland, described as Sewer District No. 1, to enjoin the issuance and sale of certain bonds of the city of Oakland to be paid by a special tax upon the property within the district. Defendant had judgment in the court below and the plaintiff appeals.

The bonds have been authorized by proceedings taken under the act of February 13, 1911, [Stats. 1911, p. 40], providing for the creation of sewer districts in cities, the construction of sewers therein, the issuing of bonds to raise the funds neces-

sary for the construction thereof, and the payment of such bonds. The plaintiff claims that this act is unconstitutional.

The act provides that the city council of any city may from time to time create, within such city, separate sewer districts, whenever it may be necessary or convenient in the judgment of the council for the proper sanitation of such district to construct a sewer therein, and may provide for the issuing of bonds to pay the cost of such sewer. The proposition to issue bonds must be submitted to a vote of the qualified electors of the district created and they can only be issued when authorized by the votes of two thirds of all the votes cast at such election. When issued, the bonds are to be paid by means of taxes levied and assessed upon the property within the district, the same to be levied, assessed, and collected in the same manner and at the same time as other taxes for municipal purposes are levied, assessed, and collected. The act contains no provision whatever for any notice or hearing upon the question of the limits of the sewer district. No property-owner is given any opportunity to be heard upon the question whether the proposed sewer will benefit his property, or the question whether his property should be included in the district to be taxed for its construction. The only hearing vouchsafed to him is the hearing with respect to the regular annual valuation of his property by the city assessor before the city board of equalization under sections 3673 to 3682 of the Political Code, which the city charter makes applicable to assessments for city purposes. At such hearing he would be permitted to show that his property was not subject to taxation for general city purposes, or that the valuation was too high, but there is no provision allowing him to show at that hearing that it was not benefited by the sewer, or that it should not have been included within the sewer district, or that it was not benefited in the same proportion as other property of like value.

1. If, under the constitutional provision that no person shall be deprived of his property except by due process of law, it is not within the power of the legislature to confer upon a city council, or other local body, the authority to create local assessment districts for taxation to pay for local improvements, without some provision for notice to the persons interested and a hearing upon the question of the limits of the district

and the exclusion of their property therefrom, if it is found not to be benefited thereby, then the act in question is unconstitutional and void. It clearly does not provide for such notice or hearing.

The constitution of California provides that no person shall be deprived of his property without due process of law. (Art. I, sec. 13.) This is also declared by the fourteenth amendment to the constitution of the United States. The question whether or not this act operates to deprive persons of property without due of process of law is, therefore, a federal question, upon which the decisions of the supreme court of the United States are the controlling authority.

It is thoroughly settled by the decisions of that court that the legislature itself has the power to fix by statute the limits of a local taxing district, such as the sewer districts contemplated by this act, without a formal notice or hearing, and that when it has done so, the courts will not inquire into the matter of a hearing before the legislature, nor into the legislative decision as to the property benefited and properly included in the district, but will regard that determination as final and conclusive. These decisions were recently reviewed and followed upon this point, by this court, in *People* v. *Sacramento Drainage District,* 155 Cal. 386, [103 Pac. 214], wherein it is said: "Where the legislature has itself spoken in the creation of a district such as this, and where the legislative determination may be deemed to depend on a question of fact, it is conclusively presumed that the legislature took evidence in its determination, and the decision which it has reached will not be subject to review by the courts." The opinion quotes the following from *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 171, [17 Sup. Ct. 56, 41 L. Ed. 369] : "The legislature, when it fixes the district itself, is supposed to have made proper inquiry, and to have finally and conclusively determined the fact of the benefits to the land included in the district, and the citizen has no constitutional right to any other or further hearing upon that question. The right which he thereafter has is to a hearing upon the question of what is termed the apportionment of the tax, i. e., the amount of the tax which he is to pay." Accordingly it was held in the Sacramento Drainage District case that the statute there involved was not rendered void by reason of the fact that it did not provide for

a hearing with respect to the limits of the district to be taxed, but arbitrarily fixed it by the terms of the act itself.

Upon the converse question of the right to and the necessity for a hearing where the legislature does not itself fix the bounds of the assessment district, but commits such determination to some local tribunal, the city council in this case, the decisions of that court are equally decisive to the effect that, at some stage in the proceedings, the landowner must be accorded a hearing upon the question whether or not his land is benefited by the proposed public improvement, in order to constitute due process of law.

In the Fallbrook case the court, after the passage above quoted, proceeded to discuss this phase of the question, saying: "But when, as in this case, the determination of the question of what lands shall be included in the district is only to be decided after a decision as to what lands described in the petition shall be benefited, and the decision of that question is submitted to some tribunal (the board of supervisors in this case), the parties whose lands are thus included in the petition are entitled to a hearing upon the question of benefits, and to have the lands excluded if the judgment of the board be against their being benefited. Unless the legislature decide the question of benefits itself, the landowner has the right to be heard upon that question before his property can be taken." In *Spencer* v. *Merchant,* 125 U. S. 345, [8 Sup. Ct. 921, 31 L. Ed. 763], the legislature had declared in the act that certain lands were benefited and should be taxed for the improvement. The court held this determination conclusive upon the courts, but added that if the determination is committed to commissioners, the landowners "may be entitled to notice and hearing upon the question whether their lands are benefited and how much." In *Parsons* v. *District of Columbia,* 170 U. S. 52, [18 Sup. Ct. 524, 42 L. Ed. 943], the court said: "Where the legislature has submitted these questions for inquiry to a commission, or to official persons to be appointed under municipal ordinances or regulations, the inquiry becomes in its nature judicial in such a sense that the property-owner is entitled to a hearing, or to a notice and an opportunity to be heard." In *Londoner* v. *Denver,* 210 U. S. 385, [28 Sup. Ct. 714, 52 L. Ed. 1103], the latest decision of the United States supreme court upon the subject, the court says: "Where

the legislature of a state, instead of fixing the tax itself, commits to some subordinate body the duty of determining whether, in what amount, and upon whom it shall be levied, and of making its assessment and apportionment, due process of law requires that at some stage of the proceedings before the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice, either personal, by publication, or by a law fixing the time and place of the hearing."

What is meant by these statements is illustrated by the two cases of *Voigt* v. *Detroit,* 184 U. S. 115, [22 Sup. Ct. 337, 46 L. Ed. 459], and *Goodrich* v. *Detroit,* 184 U. S. 432, [22 Sup. Ct. 397, 46 L. Ed. 627]. The statute of Michigan authorized the common council of a city to assess the whole, or a part, of the cost of opening a new street upon the property of the district benefited thereby, the limits of which were to be fixed by the council. No hearing was provided at or before the passage of the resolution fixing the limits of the district and declaring the amount to be raised by assessment upon the property situated within it. But after thus fixing the bounds of the district and the amount to be raised, the council was required to apportion said amount upon each parcel of property in the district in proportion to the benefits accruing thereto from the opening of the street, and another provision of the statute provided that there must be a hearing, or a notice and opportunity for a hearing, upon this assessment, before it could be confirmed or enforced. The supreme court of Michigan had held that no separate notice or separate hearing upon the questions of the bounds of the district and the amount to be charged thereon was necessary. It seems that it was also of the opinion that the hearing upon the assessment did not authorize an inquiry into the question of whether the lands within the district were or were not benefited, for it said: "It is very clear that the legislature itself might have established the special assessment district. Had it seen fit to do so, would it be claimed that its right to do so could be questioned as unconstitutional, because no notice was given to the property holders affected thereby that it was intended to establish such a district? If the answer to this question should be in the negative, why, when the legislature has delegated to the common council of the city the right to establish the

special district, should it be said that the law delegating this power is unconstitutional because notice is not required? The establishment of the special assessment district, in the one instance by the legislature, and in the other instance by the common council, is the exercise of a legislative power, with which the courts will not ordinarily interfere." (*Voigt* v. *Detroit*, 123 Mich. 552, [82 N. W. 255].) Upon this last question, the supreme court of the United States did not agree with the Michigan court. It held that the hearing upon the assessment was in effect a hearing upon the whole question, and that at that hearing inquiry must be allowed not only as to the proper proportion charged upon the respective tracts of land, but also upon the question whether any particular tract was benefited at all and should not be excluded from the district, notwithstanding the resolution of the council including it. Upon this construction, only, did it hold the assessment valid. In the Voigt case, upon this point, that court said: "He is given a thoroughly efficient opportunity to be heard to test the legality of the charge upon him. And it is only with the charge upon him that he is concerned, and of that alone he can complain. *In the legality of that charge is necessarily involved the legality of all which precedes it and of which it is the consequence.* The supreme court of the state decided, as we have seen, 'that the amount of the taxes which may be assessed upon the district or upon any given parcel of land cannot exceed the benefits.' On the hearing given, therefore, the property-owner can show a violation of the rule, if a violation there be, *and the showing will take his land out of the district and relieve it from the tax.*" (184 U. S. 122, [22 Sup. Ct. 340, 46 L. Ed. 457].) (The italics are ours.) In the Goodrich case (184 U. S. p. 440, [22 Sup. Ct. 400, 46 L. Ed. 627]), speaking to the same point, the court said: "Upon such hearing the property-owner may insist that his property was not benefited to the amount assessed, or that it was not benefited at all, and thus obtain every advantage which he might obtain were he informed of every step of the proceedings. The terms of the resolution that each lot be assessed 'in accordance with the amount of benefits derived from such improvements,' opens the whole question of the amount of benefit derived by the lot, even to showing that no benefit whatever was occasioned by the improvement. It

does not follow, however, that he had a right to be heard upon the extent of the territory to be embraced within the assessment district." The last sentence of this quotation is apparently addressed to the claim that the owner was entitled to a separate hearing upon the extent of the district.

The opinions in the Detroit cases say nothing upon the point that the exercise of a legislative power should be held as effective and conclusive when it is exercised by a local body to which it is delegated, as when it is exercised by the legislature itself. But there is no uncertainty in their effect. They determine positively that when a local improvement is to be paid for by a tax assessed upon a local assessment district, embracing only territory benefited by the improvement, and the determination of the bounds of the district and, consequently, of the property to be assessed, is delegated by the statute to a subordinate body, such as a city council, the constitutional requirement of due process of law is not fulfilled, unless there is provided a notice and an opportunity to be heard to the property-owner, upon the question whether or not his property is in fact benefited by the improvement, and whether or not it shall be, in effect, excluded from the district, although within its territorial limits.

No inquiry of this character is provided or contemplated by the provisions of the Political Code for the equalization of taxes. The constitution and statutes of this state have conclusively determined what property is subject to general taxation and where it is to be taxed. The provisions of the Political Code, referred to, concern general taxation only. The inquiry of the board of equalization is confined to the question of the proportionate valuation of the respective parcels of property taxable by law within the territory concerned. It may, of course, determine whether or not a particular parcel or article of property is situated within the city, but if the decision is that it is so situated, it can enter into no inquiry upon the question whether or not it is benefited by the uses to which the money raised by the taxation is to be applied. The act of February 13, 1911, does not purport to confer any special authority upon the board of equalization with respect to the sewer district tax or the property benefited thereby. That board has nothing to do with the question of benefits.

It may be, as was said in *Paulsen* v. *Portland,* 149 U. S. 30,

[13 Sup. Ct. 750, 37 L. Ed. 637], that the constitutional provision requiring due process of law is, in effect, automatically incorporated into every statute, so far as may be necessary to give it validity, and that, in view of this consideration, the city council, under the statute and the constitution taken together, might have passed a valid resolution creating such sewer district, by itself providing for and giving a reasonable notice fixing a time and allowing an opportunity to each property-owner to be heard on the question of benefits to his property, before the resolution creating the district was passed. It is not necessary to pass upon this question, for no such notice or hearing was given or had before the council, or at all. In view of later decisions, it is doubtful if the Paulsen case would now be followed by the supreme court of the United States. For the reason that we have given, and upon the authority of the decisions of the supreme court of the United States above cited, we can come to no other conclusion than that the resolution creating the district in question is invalid and that the bonds proposed to be issued will be void, for the reason that the property-owners will be deprived of their property to the extent of the taxes they may be compelled to pay if the proceedings are carried out, without due process of law, in that they will be afforded no opportunity to be heard with respect to the question whether or not their property is benefited by the sewer and was therefore properly included in the district to be taxed.

We have thought it proper to raise and consider this objection, although it is not discussed or presented in the briefs of counsel. We understand that this case is brought here with a view of obtaining a decision of this court as to the validity of the bonds, preparatory to and as a foundation for a sale of the bonds. Bond buyers who were properly advised would probably refuse to purchase these bonds, although we should hold that the other objections were unfounded and affirm the judgment without mentioning this objection. It is not desirable that unwary buyers should be induced to purchase them on the faith of a decision which failed to consider a fatal objection to their validity.

2. It is claimed that the bonds are invalid because the statute provides that the city of Oakland shall not be responsible for the payment of the bonds. This position appears

to be founded on the theory that the bonds should be obligations of the city of Oakland. The theory of the statute is that of a local improvement to be paid for by an assessment raised upon the property of the district benefited thereby. Such bonds do not become obligations of the city in which the district may be situated. (*Meyer* v. *San Francicso,* 150 Cal. 131, [10 L. R. A. (N. S.) 110, 88 Pac. 722] ; *Union T. Co.* v. *State,* 154 Cal. 716, [24 L. R. A. (N. S.) 1111, 99 Pac. 183].) We know of no constitutional provision requiring that the city should become liable thereon and none is cited to us.

3. Another objection is that the act of 1911 conflicts with the provision of the act of 1891 (Stats. 1891, p. 84) to the effect that no city shall incur an indebtedness for public improvements exceeding fifteen per cent of the assessed value of the taxable property therein. It is a sufficient answer to this contention to say that the bonds herein involved are authorized by the act of 1911 and that if that act is in conflict with the provision of the act of 1891 the first statute is, to that extent, repealed by the later one.

4. The objection that the rate of interest upon the bonds allowed by the statute is not in conformity with the provision of the charter of the city of Oakland concerning interest is answered by what we have heretofore said to the effect that these bonds are not the obligations of the city of Oakland, but are obligations imposed upon a certain district to be assessed for the payment thereof. Section 149 of the charter of the city of Oakland, to which this point refers, limiting the rate of interest upon obligations of the city incurred for the purpose of acquiring or constructing municipal works to five per cent per annum, applies only to obligations of the city for works undertaken by the city itself as a municipal corporation. It has no application whatever to local improvements made within a special assessment district and payable out of funds raised by taxation thereon.

5. Another objection is that the act does not provide that the bonds issued under it shall mature within forty years from their date and that this is a violation of section 18 of article XI of the constitution. The provision of the act on this subject is that the bonds "shall be payable in the following manner: a part to be determined by the legislative body of the municipality, which part shall not be less than one-

CLX Cal.—28

fortieth part of the whole amount of such indebtedness, shall be payable each and every year on a day and date, and at a place within the United States, to be fixed by the legislative body of the city, town or municipal corporation issuing the said bonds, and designated in such bonds." (Sec. 4.) Conceding, for the purposes of the case, that the constitutional provision applies to bonds of a local assesment district, its effect upon the act would be to make it void so far as it purported to authorize the issuance of bonds maturing more than forty years from the time of contracting the same, leaving it in full force with respect to an issue of bonds maturing within such period, if it was otherwise valid. It does not appear from the record that the proposed bonds are to run longer than forty years and hence this question is not presented. We do not deem it necessary even to determine whether or not the language of the act, as above quoted, would authorize an issue of bonds payable more than forty years after they were contracted. Its terms are not positive and express and as we have declared the act invalid for the reasons first discussed, it is unnecessary to go further. If future legislation is attempted on the subject, different expressions may be substituted. We remark, however, that further legislation seems unnecessary. The provisions of the Vrooman Act, authorizing the construction of sewers in cities, to be paid for by special assessments upon the property within a district fixed by the city council, would enable the persons interested to construct the desired sewer, substantially in the manner attempted to be provided for in the act of 1911, and the Vrooman Act makes proper provision for a hearing before the council as to the extent of the assessment district, before it is formed.

Upon the point first discussed we think the court erred in holding the bonds valid.

The judgment is reversed.

Henshaw, J., Angellotti, J., Lorigan, J., and Sloss, J., concurred.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing.