MILO W. AND REED J. BEKINS, EXECUTORS, ESTATE OF KATHERINE BEKINS, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87675. Promulgated September 27, 1938.

*Dana Latham, Esq.*, and *George Bouchard, Esq.*, for the petitioners.
*T. M. Mather, Esq.*, for the respondent.

OPINION

MELLOTT: The Commissioner determined that interest, amounting to $1,550.72, received by the decedent and her estate during the year 1935 upon certain bonds, was improperly excluded from gross income under section 22 (b) (4) of the Revenue Act of 1934.[1] Accordingly he determined a deficiency in tax of $48.78. Petitioners contend that he erred.

The facts were all stipulated. We shall make reference herein only to those necessary for an understanding of the question to be decided.

The petitioners are the duly appointed and acting executors of the estate of Katherine Bekins, deceased, who died testate, a resident of the State of California, May 11, 1935.

The decedent owned eight blocks of bonds, all of which she had acquired by purchase from a regular dealer in securities. They had been issued by political subdivisions of California under one of four general acts of the legislature. It will be sufficient for present purposes to make brief reference to the facts in connection with one block of bonds issued under each of the acts and to decide whether the interest received on such bonds is, or is not, exempt under the statute.

*Bonds Issued Under California Improvement Act of 1911.*

One block of bonds issued under the above act was the "Neptune Ave. and G. Street, Series 2, L. A." bonds, covering the paving of Neptune Avenue in the city of Los Angeles and the installation of gutters, sidewalks, curbs, sewers, ornamental lights, and storm drain. The total cost of the improvement was $436,910.75 and the assessment roll on the basis of which they were issued was dated November 24, 1926. The bonds owned by the decedent "covered certain properties located on Neptune Avenue" and during the taxable year there was "received from said bonds that portion of the principal provided for by said bonds, together with all the interest

---

[1] SEC. 22. (b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

\* \* \* \* \* \* \*

(4) TAX-FREE INTEREST.—Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; \* \* \*

accruing therefrom." The amount of interest received was $302.39. It is stipulated that the "amounts so maturing were paid by those property owners against whose properties said bonds were a lien to the City Treasurer of the city of Los Angeles and were paid by him to petitioners upon presentation of proper principal and interest coupons."

The bonds were in the form set out in section 63 of Act 8199 of the General Laws of California, 1931, Deering, shown in the margin.[2]

---

[2] STREET IMPROVEMENT BOND.

Series (designating it), in the city (or other form of the municipality) of (naming it).
$    100                                                                      No.

Under and by virtue of an act of the legislature of the State of California (title of this act), I, out of the fund for the above designated street improvement bonds, series will pay to        , or order, the sum of        dollars, ($    ) with interest at the rate of        per cent per annum, all as is hereinafter specified, and at the office of the        treasurer of the        of        , state of California.

This bond is issued to represent the cost of certain street work upon        , in the        of        , as the same is more fully described in assessment number        issued by the street superintendent of said        , after the acceptance of said work, and recorded in his office. Its amount is the amount assessed in said assessment against the lot or parcel of land numbered therein, and in the diagram attached thereto, as number        , and which now remains unpaid, but until paid, with accrued interest, is a lien upon the property affected thereby, as the same is described herein and in said recorded assessment with its diagram, to wit: the lot or parcel of land in said        of        , county of        , state of California,

This bond is payable exclusively from said fund, and neither the municipality nor any officer thereof is to be holden for payment otherwise of its principal or interest. The term of this bond is        years from the second day of January next succeeding the fifteenth day of the next November following its date, and at the expiration of said time the whole sum then unpaid shall be due and payable; but on the second day of January of each year, following the fifteenth day of the next November, after its date, an even annual proportion of its whole amount is due and payable, upon presentation of the coupon therefor, until the whole is paid, with all accrued interest at the rate of        per centum per annum.

The interest is payable semi-annually, to wit: on the second days of January and of July in each year hereafter, upon presentation of the coupons therefor, hereto attached, the first of which is for the interest from date to the next second day of        , and thereafter the interest coupons are for semi-annual interest.

*Redemption of bond.* This bond may be redeemed by the owner or any person interested in any lot or parcel of land described herein, in the manner provided in said act, at any time before maturity, and before commencement of proceedings for sale, upon payment to the city treasurer, for the holder of this bond, of the amount then unpaid on the principal sum thereof, with interest thereon calculated up to the due date of the next maturing interest coupon, and all penalties accrued and unpaid, together with interest for six months at the rate named in said bond.

*Default in payment of principal or interest.* Should default be made in the annual payment upon the principal, or in any payment of interest from the owner of said lot or parcel of land, or anyone in his behalf, the holder of this bond is entitled to declare the whole unpaid amount to be due and payable, and to have said lot or parcel of land advertised and sold forthwith, in the manner provided by law. In case of such default, there shall be immediately added to such defaulted amount, five per cent of the amount thereof, and on the first day of each month following such default there shall be added a further penalty of one per cent of such defaulted amount. The city shall be entitled to one-half the penalty first imposed, namely, two and one-half per cent and the other two and one-half per cent and all subsequent penalties shall be paid to the holder of the bond along with and as a part of such defaulted payment.

At said        of        , this        day of        , in the year one thousand        hundred and        .
                                    City treasurer of the        of        .

It was stipulated that we should take judicial notice of the act under which they were issued and we have done so.

The act is quite lengthy and no attempt will be made to analyze all of its provisions. Briefly, part I prescribes the various steps to be taken in connection with the making of an improvement, the creation of an assessment district, and the levying of assessments. Part II prescribes the procedure in connection with changes of grade. Part III provides for the issuance of bonds in connection with work done under part I but not under part II, while part IV contains definitions of the terms used in the act. Brief reference will, however, be made to some of the provisions of the act which are deemed to be especially pertinent to the issue to be decided.

Section 21 provides that after the contractor has fulfilled his contract an assessment shall be made "to cover the sum due for the work performed." The assessment shall refer to the contract and show the amount to be paid, and also shall show "the amount of each assessment against each lot or portion of a lot." It is filed with the city clerk. (Property belonging to the United States, the State of California, or any county or city, however, is to be omitted, § 20.) Notice is given by the clerk of the filing of the assessment and provision is made for the hearing of protests and the correction of errors. Warrant is then issued and, when it and the assessment are recorded in the office of the superintendent of streets, "the several amounts assessed shall be a lien upon the lands, lots [etc.]."

The warrant is delivered to the contractor or his assigns and constitutes "full authority * * * to collect the said assessments and they shall be free to make demands upon the owners by virtue of said warrant and to demand and receive payment of the same * * *." The warrant is returned on or after 30 days to the superintendent of streets.

After the full expiration of 30 days from the date of the warrant (§ 62) the superintendent of streets certifies to the city treasurer a complete list of all assessments unpaid which amount to $25 or over. The unpaid assessments become due and payable to the treasurer in equal annual payments, the number of the annual payments corresponding "to the number of serial payments provided to be made on the principal of the bonds issued to represent said unpaid assessments." Interest is due on each fifteenth day of May and November succeeding the filing of the list of unpaid assessments.

Section 63 provides that the city treasurer shall, upon the filing of the above list, "make out, sign, and issue to the contractor, or his assigns, payee of the warrant and assessment, a separate bond, representing upon each lot or parcel of land upon said list the total amount of the assessment against the same * * *." Then follows the

form of bond set out in the margin above. Other sections provide how the owner may, under certain circumstances, stop the issuance of bonds on his particular property, and, in the event of division of the lot or parcel of land for which a bond has been issued, for the issuance of new bonds; but it is unnecessary for present purposes to set out those provisions.

Section 67 provides:

Penalty for nonpayment. Whenever payment either upon the principal, or of the interest upon any bond issued hereunder has not been, or shall not be made when the same has become, or shall become due, and the holder of the bond demands in writing that the city treasurer proceed to advertise and sell the lot or parcel of land described by said bond as being that upon which the assessment represented by said bond was levied, then said treasurer shall proceed as provided in the next section. [Amendment approved May 23, 1921; Stats. 1921, p. 293.]

Section 68 requires the treasurer to publish notice of the "sale of property delinquent for nonpayment of bond No.     , Series No.     issued for the improvement of          ", and provides that "In order to avoid this sale, payment of the total amount" together with cost of publication and the additional interest accruing up to the date of payment must be made.

Section 72 provides that the purchaser at the sale "shall become vested with a lien on the property   *   *   *   to the extent of his bid, and is only divested of such lien by the payment to the city treasurer of the purchase money, including costs   *   *   *." The city treasurer must issue a certificate of purchase, delivering the original to the purchaser and recording a duplicate in his office.

Redemption may be made by the owner or any party in interest within 12 months from the date of purchase (§ 73), but if redemption is not made the treasurer must make a deed to the property to the purchaser or his assign. The deed, when duly acknowledged or proved "conveys to the grantee the obsolute title to the lands described therein" (§ 74). A cumulative remedy is given the holder of a bond by section 76a, under which suit may be filed "to foreclose the lien of the bond and recover the amount due thereon."

Are the bonds issued under the above act "obligations of   *   *   * (a)   *   *   *   political subdivision" of the State of California? If they are, then the interest received was improperly included by the respondent in the gross income of the estate.

In *Edwards* v. *Kearsey*, 96 U. S. 595, 600, the Supreme Court defined "obligation" as follows: " 'Obligation' is defined to be 'the act of obliging or binding; that which obligates; the binding power of a vow, promise, oath or contract,' etc. *id.*" Bouvier says: "Obligation in its general and most extensive sense is synonymous with duty.

In the more technical sense it is a tie which binds us to pay or do something agreeably to the laws and customs of the country in which the obligation is made." Webster states that "it is a formal and binding agreement or acknowledgment of a liability to pay a certain sum or do a certain thing." The Civil Code of California (sec. 1427, Deering) defines it as "a legal duty by which a person is bound to do or not to do a certain thing." In *Kansas City Southern Railway Co.*, 16 B. T. A. 665, 688, this Board said:

The word obligation "is in its general and most extensive sense, synonymous with duty"; it has been defined "to be 'the constraining power or authoritative character of a duty, a moral precept, a civil law, or a promise or contract voluntarily made; that to which one is bound; that which one is obliged or bound to do, especially by moral or legal claim; a duty.'" * * *

Thus it will be seen that the word obligation may include, in the broader sense, a mere duty, or it may mean a contract, either express or implied, and in a stricter sense, it may be confined to bonds or other similar evidences of indebtedness.

The above definitions are at best only suggestive of the sense in which the words "obligations of a political subdivision" are used in the statute under consideration. In order to determine their true meaning recourse must be had to the context and purpose of the enactment, cf. *Hibernia Savings & Loan Society* v. *San Francisco*, 200 U. S. 310; and, the section under consideration being one granting an exemption from tax, it must be strictly construed; for "Tax exemptions are never lightly to be inferred", *Heiner* v. *Colonial Trust Co.*, 275 U. S. 232; *Denman* v. *Slayton*, 282 U. S. 514.

We are not here concerned with the power of Congress to impose a tax upon an obligation of a state or one of its political subdivisions. For the purposes of this case it may be assumed that the prohibition is absolute. Cf. *Willcuts* v. *Bunn*, 282 U. S. 216. But, as the District Court said in *United States Trust Co. of New York* v. *Anderson*, 60 Fed. (2d) 291; affd., 65 Fed. (2d) 575, certiorari denied, 290 U. S. 683, "There is no reason to suppose that this statutory exemption was intended to be otherwise than declaratory of the constitutional limitation upon the power of Congress to impose a tax upon an obligation of a state. The court has not been referred to any case in which the exemption has been extended to any obligation other than to repay money borrowed by a state or a subdivision thereof. The reason for the statutory exemption does not apply except in cases which involve the power of the government to borrow money, as a means of carrying on its governmental functions."

Did the municipality borrow the money represented by the bonds as a means of carrying on its governmental functions? We think not. The general plan of the California statute (*Brook* v. *City of Oak-*

*land, infra*) is to provide a means by which a city may improve its streets without pledging its credit or assuming any obligation whatsoever. True, it permits the treasurer of a municipality to issue the bonds and to act as the agent of the owner of the bonds in making collection. But the municipality does not borrow any money nor does it obligate itself to make any payment. The bond specifically provides that "neither the municipality nor any officer thereof is to be holden for payment." The sole remedy of the holder of such a bond is to have the property sold or to foreclose the lien and recover the amount due thereon from the owner of the property. The courts of California have held that such a bond is a contract, the provisions of the statute in force at the time it was issued being a part of such contract and enforceable by the parties. "In effect", says the Supreme Court of California in *Chapman* v. *Jocelyn*, 182 Cal. 294; 187 Pac. 962, "the bond creates a power of sale whereby the contractor may enforce the lien of the assessment against the property described in the bond. The city treasurer is thereby made a special agent of the parties concerned, with authority to execute the power according to its terms, as found in the statute under which the bond is issued."

In a more recent decision, *Jeffreys* v. *Point Richmond Canal & Land Co.*, 260 Pac. 548, it was reiterated that the bonds issued under the improvement act of 1911 constituted a contract and for that reason a subsequent amendment, giving the holder of the bonds an additional remedy, was held inoperative as to bonds previously issued, as impairing, "to the detriment of the property owner, the contract rights which became fixed when the street proceedings were taken and the bonds issued."

In *Brook* v. *City of Oakland*, 160 Cal. 423; 117 Pac. 433, 436, it was claimed that bonds issued under the Improvement Act of 1911 were invalid because the act provided that the issuing city was not responsible for their payment. The Supreme Court said:

* * * This position appears to be founded on the theory that the bonds should be obligations of the city of Oakland. The theory of the statute is that of a local improvement to be paid for by an assessment raised upon the property of the district benefited thereby. Such bonds do not become obligations of the city in which the district may be situated. *Meyer* v. *S. F.*, 150 Cal. 131, 88 Pac. 722, 10 L. R. A. (N. S.) 110; *Union T. Co.* v. *State*, 154 Cal. 716, 99 Pac. 183, 24 L. R. A. (N. S.) 1111. We know of no constitutional provision requiring that the city should become liable thereon and none is cited to us.

Upon brief petitioners place considerable reliance on the fact that from 1921 to 1932 the regulations of the Department apparently did not attempt to deny exemption to interest on bonds such as those issued under the provisions of the California statute. That may be

true. We show in the margin article 74 of Regulations 62,[3] issued under the 1921 Act. Substantially the same provisions were contained in Regulations 65, 69, 73, and 77. The regulations for the taxable year, however (Regulations 86), contain a provision to the effect that special tax bills issued for special benefits to property, if such tax bills are legally collectible only from owners of the property benefited, are not the obligations of a state, territory, or political subdivision. (Art. 22 (b) (4)–1, Regulations 86.) The respondent relies partially upon the regulation, as amended, and partially upon his own later rulings, G. C. M. 13469, XIII–2 C. B. 125, and G. C. M. 16861, XV–2 C. B. 179. He denies petitioner's contention that the earlier construction precludes a modification which will result in taxing the interest in question.

It is true, as petitioners point out, that reenactment of a statute which has been construed by a department charged with its enforcement frequently is held to be tantamount to legislative approval of the interpretation placed upon it and "will not be disturbed except for weighty reasons." *Brewster* v. *Gage*, 280 U. S. 327; *Massachusetts Mutual Life Insurance Co.* v. *United States*, 288 U. S. 269. But where "the provisions of the act are unambiguous, and its directions specific, there is no power to amend it by regulation." *Koshland* v. *Helvering*, 298 U. S. 441; cf. *Manhattan General Equipment Co.* v. *Commissioner*, 297 U. S. 129; *Helvering* v. *Powers*, 293 U. S. 214; *Mary Duke Biddle* v. *Commissioner*, 302 U. S. 573; and if the construction placed upon it is obviously wrong, it should not be followed.

We are of the opinion that the earlier ruling of the department, if it exempted from tax interest upon bonds such as those issued under the California Improvement Act of 1911, was palpably and obviously wrong. The statute is unambiguous, and exempts from tax only interest upon "obligations of a political subdivision of a state." We have pointed out above some of the reasons why the bonds in question can not be considered such obligations. Additional

---

[3] ART. 74. *Interest upon State obligations.*—Among income exempt from tax is interest upon the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia. Obligations issued for a public purpose by or on behalf of the State or Territory or a duly organized political subdivision acting by constituted authorities duly empowered to issue such obligations, are the obligations of a State or Territory or a political subdivision thereof. The term "political subdivision" denotes any division of the State or Territory made by the proper authorities thereof acting within their constitutional powers for the purpose of carrying out a portion of those functions of the State or Territory which by long usage and the inherent necessities of government have always been regarded as public. Political subdivisions of a State or Territory, within the meaning of the exemption, include special assessment districts so created, such as road, water, sewer, gas, light, reclamation, drainage, irrigation, levee, school, harbor, port improvement, and similar districts and divisions of a State or Territory. The purchase by a State of property subject to a mortgage executed to secure an issue of bonds does not render the bonds obligations of the State, and the interest upon them does not become exempt from taxation, whether or not the State assumes the payment of the bonds.

or supplemental reasons for this conclusion will be set out later herein.

Upon brief petitioner relies quite strongly on two previous decisions by this Board, *Michael Pontarelli*, 35 B. T. A. 872 (then on appeal to the Seventh Circuit) and *Carey-Reed Co.*, 36 B. T. A. 36 (on appeal to the Sixth Circuit). Petitioner contends that the facts in the cited cases are "identical" with those of the instant proceeding. Considering the four blocks of bonds collectively, as the parties have done in their briefs, the contention is not without some merit. But we have examined separately the bonds issued under the four acts; and we think it is more accurate to say that the bonds issued under the California Acquisition and Improvement Act of 1925 and under the Improvement Bond Act of 1915 (which will be discussed hereinafter) are similar to those involved in the cited cases, while those issued under the acts of 1911 and 1921 are quite dissimilar.

In *Carey-Reed Co.*, *supra*, bonds were issued and sold in anticipation of the collection of the taxes. They were signed by the mayor and city treasurer, attested by the city clerk, and the municipal seal was affixed. Payment was secured by pledge of the special assessments and liens against the property, and, though the bonds did not pledge the full faith and credit of the issuing municipality, the statute nevertheless required that in the event of nonpayment "the city would prosecute with due diligence and suit for the collection thereof." We pointed out that in the sale of such bonds the city was exercising its borrowing powers and that there was a limited liability upon it for payment. We therefore held that the bonds were "obligations" within the purview of section 22 (b) of the Revenue Act of 1932.

*Michael Pontarelli*, *supra*, involved special improvement bonds issued by the city of Chicago in anticipation of its collection of deferred installments on assessments made against contiguous property to pay for a local improvement. As pointed out by the court in affirming the decision of the Board, in an opinion promulgated June 17, 1938, at 97 Fed. (2d) 793, and since the filing of briefs herein, there was a real obligation on the part of the city, it having promised "to pay to bearer" the amount of the bond, the only qualification being as to the funds out of which payment was to be made, neither the bonds nor the statute under which they were issued giving the holder the right to proceed against the property benefited or against the owner thereof.

We think that the cited cases are clearly distinguishable from the instant proceeding. As we have heretofore pointed out, the bondholders' sole remedy under the Act of 1911 is against the property benefited and the owner of it, neither the city nor any of its officers being holden for payment. There is no difference, in substance, be-

tween a bond issued under this act and a tax bill issued under the laws of many of the states. Cf. *Standard Investment Co.*, 36 B. T. A. 156; *T. I. Stoner*, 37 B. T. A. 249. We hold, therefore, that the interest collected on such bonds should have been included in petitioner's gross income for the taxable year.

*Bonds Issued under the California County Improvement Act of 1921.*

The decedent owned two blocks of bonds issued under the above act, the particulars of which are shown in paragraphs (f) and (g) of the stipulation. One block covered certain properties within an assessment district designated as "Los Angeles County Improvement District No. 524, County of Los Angeles", the bonds being some of "Series I."

The assessment roll was dated January 24, 1927, and the work for which the bonds were issued covered the paving of Peck Road, a major highway between Monrovia and El Monte, within the County of Los Angeles and lying outside of any incorporated town or city.

Upon brief petitioners state, and a check of the acts confirms, that the bonds issued under this act have exactly the same legal status as bonds issued under the Improvement Act of 1911, discussed in the preceding portion of this opinion. The Act of 1911 governed improvements and the issuance of bonds where the improvements were located entirely within the limits of incorporated cities or towns, while the Improvement Act of 1921 authorized the identical procedure where the improvements were made outside of an incorporated city or town. The latter act included by reference the provisions of the former.

The form of the bond attached to the stipulation of facts is substantially the same as that set out in the margin above. It is unnecessary to repeat what has been said above with reference to the bonds issued under the California Improvement Act of 1911. For the reasons therein set out, it must be held that the respondent did not err in including in petitioners' gross income for the year 1935 interest received upon the bonds issued under the California County Improvement Act of 1921.

*Bonds Issued under California Acquisition and Improvement Act of 1925.*

The decedent owned 11 bonds in the face amount of $1,000 each, issued under the above act during the year 1928, designated as bonds of "Los Angeles County Acquisition and Improvement District No. 19, Series B." During the taxable year 1935, $709.80 was received, representing interest on said bonds.

The district was formed for the purpose of improving Pomona Boulevard in the County of Los Angeles and the proceeds from the

sale of said bonds were employed for the work of necessary excavations and the installation of curbs, sidewalks, gutters, and concrete pavement. The portion of the highway improved lay entirely outside any incorporated town or city.

A copy of the form of bond is attached to the stipulation as Exhibit A and is shown in the margin.[4] It is in substantially the form provided by section 39 of Act 3276a of the General Laws of California, 1931, Deering.

It is stipulated that the amount due from each property owner within the district on account of his obligation with respect to said bonds is and was included each year in the property owner's general tax bill; that the amounts so due were not, and never are, billed to

---

[4] DOLLARS
1000

NUMBER

Series A

ACQUISITION AND IMPROVEMENT

DISTRICT BOND

ACQUISITION and IMPROVEMENT DISTRICT NO. _____

Of the County of Los Angeles
State of California

UNDER AND BY VIRTUE of an act of the legislature of the State of California, known as the "Acquisition and Improvement Act of 1925," as amended, the County of Los Angeles, State of California, will pay to the bearer, out of the fund hereinafter designated, at the office of the treasurer of said County, on the _____ day of _____, 19___, the sum of

ONE THOUSAND DOLLARS

in gold coin of the United States of America, with interest thereon in like gold coin at the rate of seven per cent per annum, payable semi-annually, on the second day of January and the second day of July in each year from the date hereof (except that the first interest payment will be made on the second day of July next succeeding one year after the date of this bond and the last installment of interest payments will be paid at the maturity of this bond) upon the presentation and surrender, as they respectively become due, of the proper interest coupons hereto attached, the first of which is for interest from the date hereof to the second day of July next succeeding one year after the date of this bond, and the last for interest to the maturity hereof from the last preceding date of interest payment.

THIS BOND is issued under and in conformity with the provisions of the above mentioned "Acquisition and Improvement Act of 1925", as amended, and is one of a series of bonds issued to represent the expenses of certain public improvement authorized by the provisions of said Act and comprehended in the proceedings had for the above named district. It is hereby certified, recited and declared that all proceedings, acts and things required by law precedent to or in the issuance of this bond have been regularly had, done and performed, and this bond is by law made conclusive evidence thereof.

THIS BOND is payable out of the "Acquisition and Improvement District No. _____ of the County of Los Angeles Interest and Sinking Fund" exclusively, as the said fund appears upon the books of the Treasurer of said County, and neither said County nor any officer thereof shall be holden for its payment otherwise; but in accordance with the provisions of said Act a special assessment tax will be levied and collected upon the lands in said district in an amount clearly sufficient to pay the principal and interest of said bonds as the same shall become payable.

IN WITNESS WHEREOF the Board of Supervisors of said County of Los Angeles has caused this bond to be signed by the Treasurer of said County and the seal (SEAL) of the Board of Supervisors of said County to be hereto affixed this _____ day of _____, 19___.

_____
Treasurer of the County of Los
Angeles, State of California.

the property owner as a separate item; and that the tax collector will not accept from any property owner within said district any payment on account of taxes which does not include his liability on account of the bonds.

The act under which the bonds were issued is very lengthy and for the purposes of this proceeding need not be reviewed in detail. Briefly, it confers jurisdiction upon the legislative body of a county to acquire and improve public ways within the boundaries of such county, and after a hearing, to make an order directing the treasurer to issue the necessary bonds. The bonds are to be delivered to the contractor or to his order, assign or lawful representative. The legislative body has power to determine the number of years, not to exceed 30, within which the aggregate principal of the bonds shall be paid and discharged and to fix the rate of interest thereon, not to exceed, however, 8 percent per annum, the interest to be payable semi-annually.

The holder of any matured bond or interest coupon remaining unpaid for lack of sufficient moneys in the interest and sinking fund of any district is authorized to apply the credit represented by such bond or coupon as a medium of exchange in the purchase of lands sold by the state for delinquency in the payment of special assessment taxes of the same district (§ 41). If the holder of such credit memorandum becomes a purchaser, the tax collector shall accept it in lieu of money. The legislative body is required to levy a special assessment tax upon all the lands within the district "clearly sufficient to pay the principal and interest on said bonds as the same shall become payable" and, whenever any of the bonds or any payment of principal or interest becomes due and there is not sufficient money in the interest and sinking fund to pay it, the legislative body may order the necessary amount to be transferred from the general fund of the county to the interest and sinking fund as a loan to be repaid from the first money coming into the interest and sinking fund thereafter.

The bonds are legal investments for trust funds and for state school funds and the laws with reference to registration of municipal, county, or district bonds are applicable to them.

Section 41 provides for the levying of a tax upon the property within the assessment district to provide for the payment of the interest and principal on said bonds; that the assessment "shall be made at the same time and in the same manner and by the same persons as the assessment for general county taxes"; and that "such special assessment taxes shall be collected and enforced together with, and not separately from, taxes for county purposes."

We think that there are many substantial differences between the bonds issued under this act and those issued under the acts discussed

above. The Supreme Court of California, in *American Co.* v. *City of Lakeport*, 220 Cal. 546; 32 Pac. (2d) 622, pointed out some of the differences between the bonds issued under the Act of 1911 and those issued under the Act of 1915. The latter act, as will hereinafter be pointed out, is substantially the same as the Act of 1925. See also *American Securities Co.* v. *Forward*, 220 Cal. 566; 32 Pac. (2d) 343. We shall not extend this already lengthy opinion by quoting from the court decisions. Suffice it for present purposes to point out a few of the distinctions which, we think, justify the conclusion that the bonds issued under this act are obligations of a political subdivision.

The bonds contain an unconditional promise of the city to make payment of principal and interest when due, and to levy and collect a tax upon the lands in the district in an amount clearly sufficient to do so. The amounts due from the owners are levied and assessed in the same manner and by the same persons as the assessment for general county taxes and such amounts are, and must be, included each year in the property owners' general tax bills. Whenever the special fund does not have sufficient money in it to pay the amounts due, the legislative body may order the necessary amount to be transferred from the general fund to make payment. The bonds are legal investments for trust funds, including the state school fund, and must be registered. They, like the bonds considered by the court and the Board in *Michael Pontarelli*, obligate the municipality to make payment albeit out of special funds, and hence are "obligations * * * of a political subdivision" of the state within the purview of section 22 (b) of the Revenue Act, *supra*. The respondent erred in including in petitioner's gross income for the year 1935 the interest received on such bonds.

*Bonds Issued Under the California Improvement Bond Act of 1915.*

The sum of $70 was received by the petitioners during the calendar year 1935, representing interest on bonds issued under the Improvement Bond Act of 1915. The bonds are designated "Series 64" and cover properties located in an assessment district described as "City and County of San Mateo Street Improvement." The assessment roll was dated March 3, 1930. The work consisted of paving and installation of sewers and ornamental lights on certain public highways in the County of San Mateo.

The act under which the bonds were issued "is intended to and does provide an alternative system for the issuance of bonds." (§ 20, Act 8209, General Laws of California, 1931, Deering.) Bonds may be issued under this act, in the discretion of the legislative body of the city, instead of under part III of the Improvement Act of 1911 and instead of under the Improvement Act of 1921. A copy of one of the bonds is set out as Exhibit D attached to the stipulation and is

in substantially the form provided by section 6 of the act. It has many similarities to the bonds issued under the provisions of the Improvement Act of 1925.

The bonds are payable to the party to whom they are issued or to bearer; are issued and payable in series; and are required to be registered with the city treasurer.

Upon default in payment, the land securing the assessments shall be sold in the same manner in which real property in such city is sold for the nonpayment of general municipal taxes, and in that event it is subject to redemption within one year from the date of sale. The city must become the purchaser of the property at any delinquent sale where there is no other purchaser. A cumulative remedy is given by section 11 (c) by which the amount due may be collected by suit brought in the Superior Court to foreclose the lien.

In connection with the purchase by the city it is provided (§ 16) that the city council may, and in the event of demand by the tax collector must, "at the time of fixing the annual tax rate and levying the taxes to be collected for general municipal purposes, levy a special tax upon the taxable property in the city for the purpose of paying for the lands purchased or to be purchased at such tax sales * * *. Such special tax shall be in addition to all other taxes levied for municipal purposes * * *." Section 12 provides that "In the event of there being no available funds in the treasury with which to make such payment [i. e., in connection with a purchase] the tax collector shall delay the entry of the certificate of sale [to the city] until such funds are available, making demand in the meantime upon the city council that a suitable amount be included in the next tax levy for the purpose of providing funds with which to make such payment; * * *"

One difference between the bonds issued under this act and those issued under the Improvement Act of 1925 is that the amounts due from each property owner under this act are billed by the county tax collector to the property owner as separate items. It is stipulated that "On some occasions said amounts appear as separate items on the regular tax bill. On other occasions the property owners are billed separately at times different from those on which regular tax bills are issued. The amounts due on account of said assessments under the Improvement Bond Act of 1915 may be paid and will be accepted by the county tax collector entirely apart from and regardless of whether or not the general taxes due from said property owners are paid."

We are of the opinion that the bonds issued under this act are "obligations * * * of a political subdivision" of a State or Territory within the purview of section 22 (b) (4). As pointed out above, they are somewhat similar to those issued under the Act of 1925. They are not in substance tax bills, as are those issued under

618

the Acts of 1911 and 1921. The issuing municipality, although the bonds may not pledge its full faith and credit, has many obligations and duties to perform. Specific reference has been made to many of them and they need not be repeated.

In *American Co.* v. *City of Lakeport, supra,* the Supreme Court of California pointed out some of the differences between the bonds issued under this act and those issued under the 1911 or 1921 Acts. It pointed out that under such acts "the assessments or bonds * * * are in specific sums on particular parcels of property, usually in odd denominations and payable on varying dates. The Improvement Bond Act of 1915 provides for a more marketable type of security, bonds issued serially in even denominations, secured by assessments payable at the same time and in the same manner as general taxes." It held that the act did not violate the state constitution by imposing a tax upon the property within the city for a purely municipal purpose, stating that the legislature has not levied a tax. "It has merely fixed the liability of the city to pay for property purchased, and has required the city to levy and collect taxes in an amount suitable for that purpose." Other constitutional objections were overruled and it was held that "a mandatory duty rested upon respondents [officers of the city] to levy and collect a tax to meet the delinquent assessments * * *." While the court did not specifically state that the bonds were "obligations" of the issuing municipality, it is clear that the mandatory order would not have been entered otherwise.

We are therefore of the opinion, and hold, that bonds issued under the Improvement Bond Act of 1915 are "obligations * * * of a political subdivision" of the State of California and that the respondent erred in including the interest received on such bonds in petitioners' gross income for the year 1935.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

