HARRIET A. HEATH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90599. Promulgated November 9, 1938.

*Dana Latham, Esq.*, for the petitioner.
*Alva C. Baird, Esq.*, for the respondent.

1130

# 1132

KERN: The only question involved is whether the interest received on certain California municipal and county bonds was exempt from taxation as income under section 22 (b) (4) of the Revenue Act of 1934 as being interest upon the obligations of a state or its political subdivision. Treasury Regulations 86, article 22 (b) (4)-1, set out in the margin,[4] indicates the Treasury's interpretation of the section. The bonds fall into two categories and we shall so consider them.

*Interest on bonds issued under the California Improvement Act of 1911, as amended; and under the California Improvement Act of 1915, as amended.*—The first lot of bonds was issued for the improvement of Glendale Street, in the city of Glendale, California, under the California Improvement Act of April 7, 1911, as amended, and the California Improvement Bond Act of June 11, 1915, as amended; the second lot was issued under the same acts for improvement of Tujunga Street in the city of Los Angeles; and the third lot was issued under the same acts and was for the construction of sewers in an assessment district of Sacramento, California. The stipulation provides that the bonds, although authorized under the Act of 1911, were issued under the Act of 1915, and the rights and liabilities of the parties under the bonds were and are to be determined under the later act. The Act of 1915, of which we take judicial notice, of course, is set out in the General Laws of California (Deering's Ed., 1931), as Act 8209, vol. 3, p. 4644. It is unnecessary here to do more than point out briefly what that act provides. By section 1 it authorizes a city to issue serial bonds "to represent and be secured by the assessments, which shall be made to pay for the cost of any work or improvement which shall be made in any one or more of the streets * * *"; and by section 3 it fixes the time of payment and interest rate, and requires the city treasurer to "keep a redemption fund designated by the name of said bonds, into which he shall place all sums received by him from the

---

[4] ART. 22 (b) (4)-1. *Interest upon State obligations.*—Interest upon the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia is exempt from the income tax. Obligations issued by or on behalf of the State or Territory or a duly organized political subdivision acting by constituted authorities empowered to issue such obligations, are the obligations of a State or Territory or a political subdivision thereof. Special tax bills issued for special benefits to property, if such tax bills are legally collectible only from owners of the property benefited, are not the obligations of a State, Territory, or political subdivision. The term "political subdivision," within the meaning of the exemption, denotes any division of the State or Territory which is a municipal corporation, or to which has been delegated the right to exercise part of the sovereign power of the State or Territory. As thus defined, a political subdivision of a State or Territory may, for the purpose of exemption, include special assessment districts so created, such as road, water, sewer, gas, light, reclamation, drainage, irrigation, levee, school, harbor, port improvement, and similar districts and divisions of a State or Territory.

collection of the assessments made for the payment of the cost of the work or improvements upon which the said bonds are issued and of the interest and penalties thereon and from which fund he shall disburse and pay the said bonds and the interest due thereon * * *; and under no circumstances shall said bonds or the interest thereon be paid out of any other fund." Section 11 makes the unpaid assessments a trust fund for the payment of the bonds and interest, and constitutes the assessments a lien against the lots and parcels of land on which made; section 12 provides for sale of the land upon default of payment; and section 16 provides for the levying by the city of a special tax with the proceeds of which to purchase such assessed lands on sale; section 20 provides that the act shall not affect the Improvement Acts of 1893 and of 1911 "but is intended to and does provide an alternative system for the issuance of bonds to represent and be secured by the assessments mentioned in this act." Other provisions not pertinent here are omitted. Section 6 establishes the form of the bonds, already set out in our findings of fact, but a portion of which may be quoted here:

Under and by virtue of the act * * * the of (a municipal corporation) will on the second day of July, 19 , out of the redemption fund for the payment of the bonds issued upon the assessments made for the work upon and improvements on certain streets * * * pay to bearer, the sum of ($ ), with interest thereon * * *.

This bond is one of several annual series of bonds of like date, tenor and effect, but differing in amounts and maturities, issued by said municipality under said act for the purpose of providing means for paying for the work and improvements described in said resolution of intention, and is secured by the moneys in said redemption fund and by the unpaid assessments made for the payment of said work, and, including principal and interest, is payable exclusively out of said fund.

We considered this type of bond issued under the Act of 1915 in *Milo W. Bekins et al., Executors*, 38 B. T. A. 604, and are ruled by our decision in that case. There we held that bonds issued under the Improvement Bond Act of 1915 are "obligations * * * of a political subdivision" of the State of California and that interest received on such bonds was therefore not properly includable in petitioner's gross income.

We hold accordingly that petitioner's interest from such bonds was exempt.

*Bonds issued under authority of the Road District Improvement Act of California of 1907, as amended.*—The petitioner here received interest in 1935 on bonds issued by the Counties of San Bernardino, Merced, and Orange in California under authority of the Road Improvement Act of March 21, 1907, as amended, Act 3276, General Laws of California (Deering's Ed.) vol. 1, p. 1573, of which we take judicial notice.

Section 22 of that act provides for the form of the bonds, which has been set out in full in our findings of fact and only two portions of which need be quoted here:

Under and by virtue of an act of the Legislature of the State of California known as the "Road district improvement act of 1907" (here may be inserted a further designation of the act if desired) the county of , State of California will pay to the bearer out of the fund hereinafter designated, at the office of the treasurer of the said county, on the day of , 19 , the sum of Dollars in gold coin of the United States of America, with interest thereon * * *.

This bond is payable out of road district improvement fund number exclusively, as the same appears on the books of the treasurer of said county, and neither said county nor any officer thereof shall be holden for its payment otherwise; but in accordance with said act the board of supervisors of said county will annually, at the time of levying other taxes, levy upon all the land in said road improvement district a special assessment tax in an amount clearly sufficient to pay the principal and interest of said bonds as the same shall become payable.

Section 24 provides for the equal payment of principal and interest of the bonds in accordance with the determination of the board of supervisors. Section 26 provides for interest and sinking fund, and a special assessment tax in part as follows:

In each road improvement district in which bonds have been issued, a special fund to be named "Road district improvement interest and sinking fund number " (the number to be that of the district) for the discharge and payment of such bonds and interest thereon, shall be constituted as follows, to wit: There shall each year, at the time of the general tax levy for state and county taxes, be levied against and upon all of the land (not including improvements, but including any land which is the operative property of any public utility) within said road improvement district a special assessment tax in an amount clearly sufficient, together with any moneys which are or may be in said fund, to pay all the principal which has become or will become due and all interest which has become or will become payable on said bonds, before the proceeds of another tax levy made at the time of the general tax levy for state and county purposes, can be available for the payment of such bonds.

The same section further provides for the levying of the special assessment tax against all public lands not specifically excepted in the resolution of intention to issue the bonds and makes the obligation enforceable against the owner of the land or governing body controlling it, and concludes with the following provisions for the taxation of operative property of public utilities and for the transfer of funds to the road district improvement interest and sinking fund:

*Transfer.* The board of supervisors may annually, at the time of making the said tax levy, transfer from the general road fund of the county, or from the fund of the road district or districts in which the road improvement district is situated, to the road district improvement interest and sinking fund, such amount as in the judgment of said board should be transferred.

*Operative properties of public utilities. Transfer of funds.* In any event it shall be the duty of said board of supervisors to levy a special assessment tax upon all lands including lands comprising operative property of public utilities within said road improvement district, sufficient to pay the principal and interest of said bonds as the same shall become payable, and the board of supervisors is hereby vested with power to do all and singular the things which in this section aforesaid it is declared shall be done. Whenever any of said bonds or any interest thereon shall become due and there shall not be sufficient money in said road district improvement interest and sinking fund to pay same, the board of supervisors may, pending the levy and collection of a tax therefor, order the amount of money necessary to pay the bonds or interest so falling due, to be transferred from the general fund to said road district improvement interest and sinking fund, and the amount of money so transferred shall be deemed a loan to said road district improvement interest and sinking fund, and shall be repaid to the general fund from the first money coming into said road district improvement interest and sinking fund thereafter. The special assessment taxes provided for herein shall be levied and collected in the same mode and manner and by the same officers as the ordinary county taxes, and all laws applicable to the levy, collection and enforcement of such county taxes are hereby made applicable to said special taxes.

*Any money remaining in any road district improvement interest and sinking fund* after all the bonds of the district have been retired, shall be transferred to the general fund of the county, and may be used in repairing any road in the district. If the greater part or all of the district has been annexed to an incorporated city said money shall be placed in the general fund of the city to be used in repairing any road within the district. [Amendment approved June 19, 1931; Stats. 1931, p. 2313.]

Other provisions not relevant to the question here presented are omitted.

It should be noted that in the bond itself it is stated that "the county * * * will pay to the bearer out of the fund hereinafter designated" the principal and interest, and that it is also stated that it will be "payable out of road district improvement fund number exclusively, * * * and neither said county nor any officer thereof shall be holden for its payment otherwise", and further that "the county will annually, at the time of levying other taxes, levy * * * a special assessment tax in an amount clearly sufficient to pay the principal and interest * * *." The parties stipulated that the assessment was included in every assessment district land owner's "general tax bill", and was never billed separately, and that the county tax collector would not accept "any payment on account of general taxes which does not include his liability on account of the bonds here in question." Attention may also be called to that part of section 26, which provides for the transfer of money from the "general fund", as a loan, whenever it shall become necessary to meet payment of principal or interest on the bonds and the "road district improvement interest and sinking fund" shall lack sufficient

money for that purpose. It will be observed that the county promises to "pay to the bearer" the principal and interest, a fund is set aside to meet these obligations, and statutory provision is made for the transfer of money from a general fund for the same purpose, and that the special assessment is collected as a part of the general taxes.

We have recently sustained the immunity of bonds with a similar obligation in *Milo W. Belkins et al., Executors, supra,* at page 13 (California Acquisition and Improvement Act of 1925 bonds). Our decisions in *Michael Pontarelli,* 35 B. T. A. 872; affd., 97 Fed. (2d) 793; and *Carey-Reed Co.,* 36 B. T. A. 36, support the same conclusion.

Upon the authority of those cases we hold that on these facts the bonds issued under the California Road Improvement Act of 1907 were the obligations of the several counties, and as such the obligations of a political subdivision of the State of California within the meaning of the statute. The interest on such obligations is not, therefore, to be included in petitioner's gross income for Federal tax purposes.

*Decision will be entered under Rule 50.*